Abbott HUBBARD, Appellant,

v.

Joseph A. CALIFANO, Secretary of Health, Education and Welfare, Appellee.

No. 77–1718.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 7, 1978.

Decided Aug. 24, 1978.

Richard W. Crews, Beckley, W. Va. (E. Carl Meadows, Jr., Meadows & Crews, Beckley, W. Va., on brief), for appellant.

Phillip I. Morse, Special Asst. U. S. Atty., Baltimore, Md. (John A. Field, III, U. S. Atty., Charleston, W. Va., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, WIDENER and HALL, Circuit Judges.

K. K. HALL, Circuit Judge.

## I.

### BASIC ENTITLEMENT

The court adopts and incorporates its discussion of basic entitlement found in Part I of *Petry v. Califano*, 577 F.2d 860 (4th Cir. 1978). Claimant here relies on the presumption found in 20 C.F.R. § 410.414(b), as did the claimant in *Petry*, and here also, the Secretary does not challenge the facts that claimant is or was a coal miner, that pneumoconiosis, if found to exist, arose out of the claimant's coal mine employment,[1] and

---

1. The Secretary found that: these records show that the claimant was a coal miner for at least 20 years and is there-

that for the purposes of the § 410.414(b) presumption, claimant meets the fifteen-year requirement.

## II.

## THE § 410.414(b) PRESUMPTION

The court further adopts and incorporates its discussion of the 20 C.F.R. § 410.-414(b) presumption found in Part II of *Petry.*

## III.

## THIS APPEAL

■ Although acknowledging that plaintiff meets the fifteen year requirement of the presumption, the Secretary denies that claimant is totally disabled due to a chronic respiratory impairment. A review of the evidence, in light of our analysis of the presumption as found in *Petry,* is necessary to determine if the Secretary's decision was based on substantial evidence.[2]

### 1. *X-rays*

■ The Act and regulations prohibit the denial of a claim for benefits solely on the basis of negative X-rays. 30 U.S.C. § 923(b); 20 C.F.R. § 410.414(c). Further-more, it is through the presentation of evidence other than X-rays, biopsies or autopsies that the presumption of § 410.414(b) is raised, and it is likewise by a finding that the other evidence does not demonstrate a totally disabling chronic respiratory impairment that the existence of the presumption is defeated. Therefore, inconclusive or contradictory results of the X-rays inure to the benefit of neither party.

### 2. *Pulmonary function studies*

The record reveals that five pulmonary function studies were performed, four of which apparently were found credible by the Secretary.[3] Under the interim regulations, 20 C.F.R. § 410.490(b), a claimant with at least fifteen years of coal mine employment will be presumed totally disabled due to pneumoconiosis if pulmonary function studies reveal the presence of a chronic respiratory or pulmonary disease, as demonstrated by values specified in the regulations.[4] Plaintiff does not rely on the presumption created in the interim regulations, but merely uses a comparison of his pulmonary function study values with those in the table as persuasive evidence of his total disability. The height of the claimant

---

2. Some of the evidence relied on by the claimant was accumulated after the June 30, 1973 cutoff date for filing claims with the Department of Health, Education and Welfare. The Secretary considered this evidence relevant to the instant claim, see *Talley v. Mathews,* 550 F.2d 911, 917 (4th Cir. 1977), and made no distinction between the pre-cutoff date and post-cutoff date evidence. We agree with the method in which the Secretary evaluated the evidence.

fore entitled to full consideration of this claim under the applicable regulations, including all statutory presumptions set out therein.

In fact, plaintiff alleged forty-two years of coal mine experience. See 20 C.F.R. § 410.416, which reads in pertinent part,

(a) if a miner was employed for ten or more years in the Nation's coal mines, and is suffering or suffered from pneumoconiosis, it will be presumed, in the absence of persuasive evidence to the contrary, that the pneumoconiosis arose out of such employment.

3. Substantial evidence supports the Secretary's finding that the fifth pulmonary function test was not credible. "The reported findings [were] in such sharp contrast to all of the earlier test results that the validity of the test [was] highly questionable."

4. The relevant values are as follows:

| Height | Equal to or less than— |
|---|---|
| | $FEV_1$ and MVV |
| 69″ | 2.4    96 |
| 70″ | 2.5    100 |
| 71″ | 2.6    104 |
| 72″ | 2.6    104 |
| 73″ or more | 2.7    108 |

20 C.F.R. § 410.490(b)(1)(ii).

$FEV_1$ stands for one-second forced expiratory volume, and measures the volume of air claimant can expire in one second, expressed in liters.

MVV stands for maximum voluntary ventilation, and measures claimant's maximum breathing capacity, expressed in liters per minute.

and results of the tests administered to the claimant were as follows:

| | | Height of Claimant | $FEV_1$ | MVV |
|---|---|---|---|---|
| 1. | Oct. 5, 1970 | 71¼ | 2.575 | 50 |
| 2. | Oct. 22, 1971 | 71½ | 4.2 | 166 |
| 3. | May 16, 1972 | 72 | 3.05 | 100 |
| 4. | Feb. 20, 1973 | 72 | 2.83 | 97 |

■ The values in the first test apparently come within the table values,[5] but as noted above, plaintiff does not rely on the results of this test for recovery; however, these results, along with the examining physician's findings of a mild restrictive defect and a disproportionately low MVV are relevant other evidence of total disability under § 410.414(c). The other three tests were interpreted by claimant's physicians as either normal, or indicative of minimally restrictive ventilatory insufficiency. Although this evidence does not compel an award of benefits, the undisputed testimony of claimant's physicians is relevant in proving a totally disabling chronic respiratory impairment.[6]

### 3. Blood-gas tests

The record reveals that blood-gas tests were performed in 1972 and 1974. The 1972 tests produced values demonstrating normal to minimal ventilatory insufficiency before exercise, and abnormal ventilatory response with exercise. A consultant to the Secretary reviewed this test as totally negative. The 1974 tests resulted in values extremely close to those provided in the regulations which would entitle a claimant with pneumoconiosis to a presumption of total disability,[7] and the physician who administered this test concluded that claimant had a marked disturbance in the ventilation to profusion relationship, indicating pneumoconiosis. The Secretary does not directly rebut the results of this later blood-gas test, or the physician's diagnosis resulting therefrom, except to say that this doctor's findings are inconsistent with other diagnostic reports.

### 4. Physical examination

In addition to or in conjunction with the tests outlined above, claimant was examined personally on several occasions by five doctors, one having been his personal physician for several years. Four of the five doctors found claimant had black lung and two expressly found claimant disabled. Although basing their conclusions in part on the disputed tests outlined above, they also had the benefit of examining personally the claimant and evaluating his condition. After performing an exercise test for one physician, whose testimony the Secretary excluded for no apparent reason, claimant was noted to be pale, sweating and wheezing. The same physician also found the existence of rales and other subjective symptoms of a respiratory impairment, the absence of which the Secretary relied on in his denial of an award to claimant.

■ Most importantly, the claimant's treating physician, after observing claimant personally during a week of hospitalization, after conducting several tests, and after reviewing the entire record, concluded that claimant had a marked disturbance in the

---

5. In light of the results of the October 5, 1970 test, it was inaccurate for the Secretary to conclude that none of the tests came within the levels provided in the regulations.

6. The statute and regulations specifically classify pulmonary function studies as one type of relevant evidence a miner may use to establish a totally disabling chronic respiratory impairment. 30 U.S.C. § 923(b); 20 C.F.R. § 410.-414(c). Although these studies are relevant in establishing the existence of a totally disabling chronic respiratory impairment, failure to achieve the table values does not establish that a claimant is not entitled to the presumption. Henson v. Weinberger, 548 F.2d 695 (7th Cir.

1977). Pulmonary function studies do not conclusively show the absence of pulmonary or respiratory impairment. Bozwich v. Mathews, 558 F.2d 475, 480 (8th Cir. 1977), relying on Social Security Ruling 37–73, at 4.

7. See Appendix to Part D of the regulations, 20 C.F.R. § 410.401 et seq. Again, the claimant does not rely on the blood-gas tests alone as qualifying him for benefits, but uses a comparison of his results with those in the regulations to help establish his total disability. As he does in this case, the Secretary often uses the failure to meet the table values as evidence of no disability.

ventilation to perfusion relationship, as demonstrated by the 1974 blood-gas test and his general observation of the claimant. This court places great reliance on a claimant's treating physician, *Martin v. Secretary,* 492 F.2d 905 (4th Cir. 1974), especially where the Secretary neither has the claimant examined nor medically rebuts the tests upon which claimant's physicians rely.

### 5. *Claimant's own testimony*

■ Although "primary consideration is given to the medical severity of the individual's pneumoconiosis," 20 C.F.R. § 410.422, the testimony of the claimant is relevant in proving a totally disabling respiratory impairment, and it was not rebutted by the Secretary. Claimant's own testimony revealed shortness of breath, low tolerance to any exertion, chest pains, disturbed sleeping, productive cough, and other similar occurrences. The physicians who examined plaintiff clinically verified most of these complaints and none disputed any of them.

■ The Secretary properly found that the claimant had at least twenty years of coal mining employment, and that he was entitled to the benefit of the presumptions arising therefrom.[8] Although claimant's length of employment in the mines does not create any presumption of disability, it is relevant in determining whether there is a totally disabling respiratory impairment. *Phillips v. Mathews,* 555 F.2d 1182, 1183 (4th Cir. 1977).

### IV.

### CONCLUSION

This case reveals the same general weaknesses in the Secretary's denial as did *Petry.* Although many of the objective medical tests were disputed, other evidence, which the Secretary did not properly address, indicated the existence of a totally disabling chronic respiratory impairment.

---

**8.** *See* note 1 *supra.*

**9.** Once the presumption is established, the regulations provide two ways in which it can be rebutted:

This presumption may be rebutted only if it is established that the miner does not, or did

In this case, however, there were also results of pulmonary function tests and blood-gas tests which either came within the values found in the regulations, or came extremely close, indicating below-normal respiratory ability. The Secretary did not give proper weight to these test results which were in part the basis for the various findings of respiratory impairment and total disability by claimant's physicians.

■ Therefore, we hold that the Secretary's decision was not supported by substantial evidence and that the claimant did establish the existence of a totally disabling chronic respiratory impairment, giving rise to the § 410.414(b) presumption. We reverse the district court and direct it to remand the case to the Secretary. Furthermore, since this claim is nearly eight years old, we see no need for further consideration of the entitlement issue. Our review of the evidence, the briefs, and oral arguments, indicates that the Secretary would be unable to rebut the presumption by proof either that the claimant did not suffer from pneumoconiosis, or that his impairment did not arise from his working in the mines.[9] Negative or disputed X-rays alone cannot be the basis for denying a claim, 30 U.S.C. § 923(b); 20 C.F.R. § 410.414(c), and the other evidence in the record does not show the non-existence of pneumoconiosis. Therefore, the district court should enter an order instructing the Secretary to award benefits to the claimant.

*REVERSED AND REMANDED WITH INSTRUCTIONS.*

WIDENER, Circuit Judge, dissenting:

I respectfully dissent to the direction of the court to enter judgment in favor of the plaintiff. Rather, I think the case should be remanded to the Secretary to reconsider the case under the proper standards.

Although I agree with that part of the reasoning of the court set out in parts I and

---

not, have pneumoconiosis, or that his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

20 C.F.R. § 410.414(b)(2).

II of the opinion. I do not agree with much of the reasoning in part III of the opinion for the reasons which follow:

I

That part of the opinion of the panel denominated "(1) X-rays," on page 4 of the opinion, is copied verbatim from *Petry v. Califano,* 577 F.2d 860 (4th Cir. 1978). The last sentence of that paragraph is "Therefore, inconclusive or contradictory results of the X-rays inure to the benefit of neither party."

I do not quarrel with the application of that sentence in *Petry,* for it may very well have been true in that case. Here, however, the panel obviously would extend the paragraph I have referred to, and especially the sentence I have quoted, into an across-the-board application, meaning that where there is contradictory X-ray evidence, it may inure to the benefit of neither party.

This across-the-board application of *Petry* I think is contrary to 30 U.S.C. § 923(b).

What I think the analysis should be keyed to is the reconciliation of 30 U.S.C. § 923(b) and 30 U.S.C. § 921(b)(4).

Section 921(c)(4) provides that a miner employed 15 years or more in an underground mine who presents a black lung claim and "submitted in connection with" such claim is an X-ray which is "interpreted as negative with respect to the requirements", permitting recovery on account of such X-ray under the terms of the statute, then "if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis. . . ." The just quoted language relating to the consideration of evidence in part B claims must be read, however, in accordance with the statutory mandate of § 923(b). A part of that section is: "In determining the validity of claims under this part [part B], *all relevant evidence shall be considered, including,* where relevant, medical tests such as blood gas studies, *X-ray examination,* electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history,

evidence submitted by the claimant's physician, or his wife's affidavits, and, in the case of a deceased miner, other appropriate affidavits of persons with knowledge of the miner's physical condition, and other supportive materials." (italics added).

It is at once apparent that the across-the-board ruling that the panel makes here that inconclusive or contradictory results of X-rays inure to the benefit of neither party is in conflict with 30 U.S.C. § 923(b).

I think the correct construction of § 921(c)(4) with respect to the X-ray requirement above mentioned is that when all of the X-ray evidence submitted in connection with the claim is interpreted as negative, so that the claim does not meet the requirements of § 921(c)(3)(A), then, if other evidence demonstrates the existence of a totally disabling respiratory pulmonary impairment, the presumption should arise. Construing § 921(c)(4) in this manner makes it entirely consistent with § 923(b) and gives full effect to both sections of the statute. That statutes should be read as consistent rather than inconsistent is too familiar a rule to bear citation.

As I see the case, then, assuming all the X-ray evidence does not fulfill the statutory requirements of § 921(c)(3), if the other evidence is sufficient to establish the presumption, in determining if the presumption is overcome, the Secretary "shall" consider "all relevant evidence" which specifically by statute includes "X-ray examination." Thus, I think the Secretary is entitled to consider X-ray examinations in considering whether or not the presumption permitted by § 921(c)(4) is overcome, as he is not in considering whether it arises.

I think the analysis in this case forbidding the Secretary from taking that into account is contrary to § 923(b). No rule of evidence which I am familiar with prevents the consideration of relevant evidence unless it is excluded by public policy, Constitution, or statute, none of which have any application here. If some of the X-rays submitted by either side in connection with a black lung claim show the miner not to have black lung, then they should be considered, keeping in mind, however, that no

claim can "be denied solely on the basis of the results of a chest roentgenogram." 30 U.S.C. § 923(b). In like vein, if some of the X-rays submitted show the miner to have black lung, I also think the Secretary must consider those as a part of "all relevant evidence," although the X-ray evidence viewed alone was insufficient to establish the right to recovery under § 921(c)(3). The only reason for consideration of other evidence separately from the X-rays is the requirement of the statute in § 921(c)(4). For other purposes and judging the whole case, the evidence in these cases should be weighed just as it in in any other case, subject, of course, to statutory restrictions and command.

## II

The blood gas tests, as the opinion of the panel notes, were administered by the claimant's physicians. They are:

| Date | Arterial PCO₂ (mmHg) | | Arterial PO₂ | |
|---|---|---|---|---|
| | 3/12/74 | 36 | 3/12/74 | 60 |
| | 5/16/72 (at rest) | 37.5 | 5/16/72 | 89 |
| | 5/16/72 (after exercise) | 36.5 | 5/16/72 | 84 |

On page 798 of CFR 20 (parts 400–499) (1977), are tabulated values which permit a finding of total disability due to black lung in the absence of evidence rebutting such finding if the oxygen tension is equal to or less than stated values with relation to the carbon dioxide tension. For carbon dioxide tension of 36, the oxygen tension permitting recovery is 59; for carbon dioxide of 37.5, the oxygen is 57.5; and for carbon dioxide of 36.5, the oxygen is 58.5.

It is at once apparent that none of the oxygen tension readings permit recovery. All of them are outside the required values, and two of them are substantially above the breaking point.

Especially in view of the fact that these tests were made by the claimant's own physicians and the command of § 923(b) to consider "blood gas studies," I do not believe the analysis of the panel is sufficient to entirely discount as it does the blood gas tests except as it weighs the evidence and considers them as "demonstrating a disturbance in the ventilation to perfusion relationship." Nothing in the record that I can see shows what a normal blood gas study would be. I fault equally both parties for this oversight, the plaintiff because he has the burden of proof, and the Secretary because he undoubtedly has the information at hand.

## III

The opinion of the panel does not mention Social Security Ruling 73–37, expressly relied on by the Secretary in denying the claim. The Secretary says, on page 10 of the Appeals Council opinion (App. p. 15), that it "is further guided by Social Security Ruling 73–37 . . . which holds that where X-ray or pulmonary function test results fail to establish total disability under the interim criteria of § 410.490, there is an inference that the miner is not totally disabled." The Council further stated that it believed "that the other relevant evidence presented in this case does not outweigh the inference presented by negative X-rays and pulmonary study values which exceed the liberal interim criteria that the claimant was not totally disabled due to pneumoconiosis, actual or presumed, at any time on or before June 30, 1973."

Thus, the Council specifically gave weight to the inference which it found was required by the Social Security Ruling.

I would simply hold that Social Security Ruling 73–37 is invalid. The principal reason for my thinking is that it sets up an inference neither authorized by statute nor by the dictates of common knowledge. The failure to prove a positive does not necessarily infer the negative as the inference set up by the ruling requires. It also may be said to be somewhat contrary to § 923(b) which requires the Secretary to consider all relevant evidence, as well as setting up an evidentiary rule not authorized by § 921(c)(4) in the consideration of what other evidence should demonstrate the existence of a totally disabling respiratory or

pulmonary impairment. See *Prokes v. Mathews,* 559 F.2d 1057 (6th Cir. 1977), and *Bozwich v. Mathews,* 558 F.2d 475 (8th Cir. 1977).

### IV

On the whole case, I think the panel withdraws from the Secretary the function of weighing evidence, and I do not think that is permissible in this case. One illustration which should suffice is that, although the panel holds contradictory X-ray results cancel each other out and inure to the benefit of neither party, it goes on to give the benefit to the plaintiff of contradictory ventilatory and blood gas tests, even the interpretations thereof, with no authorization I can find.

I would vacate and remand.