**George R. HUBBARD, Appellant,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Appellee.**

**Lawrence A. TAYLOR, Appellant,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Appellee.**

**Nos. 77–1898, 77–1987.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 4, 1978.

Decided April 18, 1979.

Richard W. Crews, Berkley, W. Va. (E. Carl Meadows, Jr., Meadows & Crews, Berkley, W. Va., on brief), for appellant.

Phillip I. Morse, Sp. Asst. U. S. Atty., Baltimore, Md. (Robert B. King, U. S. Atty., Charleston, W. Va., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and WIDENER and PHILLIPS, Circuit Judges.

WIDENER, Circuit Judge:

George R. Hubbard and Lawrence A. Taylor appeal from the district court's affirmances of the Secretary of Health, Education and Welfare's (Secretary) denials of black lung benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. § 901 et seq. Hubbard and Taylor originally had separate appeals pending in which they asserted that the Secretary's decisions denying them black lung benefits were not supported by substantial evidence. *Hubbard v. Califano*, No. 77–1898; *Taylor v. Califano*, No. 77–1987. We consolidated the cases and requested supplemental briefing and argument on the issue of the validity of Social Security Ruling 73–37, relied upon by the Secretary in denying both Hubbard and Taylor black lung benefits. Determining that Social Security Ruling 73–37 is invalid, we remand both cases to the Secretary for a redetermination of Hubbard's and Taylor's entitlement to black lung benefits absent any application of Social Security Ruling 73–37.

Hubbard filed an application for black lung benefits on December 2, 1971, which was denied on March 15, 1972 by initial determination of the Bureau of Disability Insurance. After the Act was amended in 1972, Hubbard's claim was re-examined and again denied by the Bureau of Disability Insurance. He then requested a hearing, which was held on July 16, 1974. At the hearing, the following types of medical evidence were introduced: (1) chest X-rays; (2) pulmonary function studies; (3) blood gas studies; (4) results of an exercise tolerance test; and (5) results of physical examinations made by several doctors. Additionally, Hubbard and his wife testified as to his physical condition. Based upon the evidence adduced at the hearing, the administrative law judge determined that "[t]he preponderance of medical and other evidence does not demonstrate the existence of a totally disabling pneumoconiosis or a totally disabling chronic respiratory or pulmonary disease presumed to be pneumoconiosis on or before June 30, 1973," and held that Hubbard was not entitled to black lung benefits. On Hubbard's request for review,

the appeals council affirmed the decision. In so affirming, the council, in part, stated:

"Lung scan results must be considered along with chest X-ray results and spirometry tracings before determining that respiratory impairment does in fact exist. *Social Security Ruling 73–37 holds that where X-ray or ventilatory test results fail to establish disability under the interim criteria, an inference is raised that the claimant is not totally disabled.* In the instant case, the Appeals Council believes that the results of blood gas studies, physical examination, and lung scan, obtained long after the jurisdictional cut-off date are insufficient to overcome the negative chest X-rays and essentially normal pulmonary function studies." (Italics added)

Hubbard then brought an action in the district court where he contended, as he now does on appeal, that the medical evidence established that he is totally disabled as a result of a chronic respiratory or pulmonary impairment and was thus entitled to the presumption of pneumoconiosis set forth in 30 U.S.C. § 921(c)(4) and 20 C.F.R. § 410.414(b)(1). He further contended that the Secretary had not rebutted the presumption in the manner provided for in § 921(c)(4) and 20 C.F.R. § 410.414(b)(2). The district court affirmed the Secretary's denial of benefits.

Taylor filed an application for black lung benefits on April 5, 1971, which was denied on May 12, 1971 by the Bureau of Disability Insurance. After the Act was amended in 1972, the Bureau reconsidered Taylor's claim and again denied him black lung benefits. He then requested a hearing, which was held on April 10, 1974. At the hearing, the following types of medical evidence were introduced: (1) chest X-rays; (2) pulmonary function studies; (3) blood gas studies; and (4) results of physical examinations made by two doctors. Additionally, Taylor testified at the hearing as to his physical condition. The administrative law

judge determined that Taylor was "totally disabled due to pneumoconiosis, which arose out of his employment in the Nation's coal mines," and held that he was entitled to black lung benefits. The appeals council, on its own motion, reviewed the decision. Based upon its analysis of the evidence adduced at the hearing, as well as some additional evidence, the council reversed the administrative law judge's decision. In reversing, the council, in part, stated:

"*Social Security Ruling 73–37 holds that where X-ray or ventilatory test results fail to establish disability under the interim criteria, there is an inference that the miner is not totally disabled.* In this case, the Appeals Council believes that the reported physical findings are insufficient to overcome the negative X-rays and normal pulmonary function studies." (Italics added)

Taylor then brought an action in the district court to obtain judicial review of the final decision of the Secretary denying him black lung benefits. Like Hubbard, he contended, as he now does on appeal, that the medical evidence of record established that he is totally disabled as a result of a chronic respiratory or pulmonary impairment and was thus entitled to the presumption of pneumoconiosis set forth in 30 U.S.C. § 921(c)(4) and 20 C.F.R. § 410.414(b)(1). Taylor further contended that the Secretary had not rebutted the presumption in the manner provided for in § 921(c)(4) and 20 C.F.R. § 410.414(b)(2). The district court affirmed the Secretary's denial of benefits.

In determining that Hubbard and Taylor do not suffer from a totally disabling chronic respiratory or pulmonary impairment and, consequently, are not entitled to the presumption of total disability due to pneumoconiosis contained in 30 U.S.C. § 921(c)(4) and 20 C.F.R. § 410.414(b)(1), the Secretary clearly relied, in part, upon Social Security Ruling 73–37.[1] That Ruling provides:

---

1. The Secretary's contention in his brief that the determination that Hubbard and Taylor are not suffering from a totally disabling respiratory or pulmonary impairment was made without

primary reliance on Social Security Ruling 73–37 does not avail him. That distinction, even if valid, was not made in his rulings.

"Where X-ray or ventilatory function test results submitted by a claimant for black lung benefits fail to establish total disability under interim regulatory criteria in Regulations No. 10, sections 410.490 ff., *held*, there is an inference that the minor is not totally disabled. *Further held*, where other relevant evidence is submitted, total disability may be determined to exist only when the evidence in file establishes the level of severity contemplated in § 410.426."

■ We begin by noting that Social Security Ruling 73–37 represents the Secretary's interpretation of his own regulations and the statute he is responsible for administering and, consequently, must be sustained unless determined to be unreasonable. See, e. g., *Northern Indiana Public Service Co. v. Porter County Chapter of Izaak Walton League*, 423 U.S. 12, 14–15, 96 S.Ct. 172, 46 L.Ed.2d 156 (1975); *Ehlert v. United States*, 402 U.S. 99, 105, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971).

Appellants contend that the Ruling is unreasonable, while the Secretary contends that the

"ruling stands for the patently reasonable proposition that where both 'x-ray and ventilatory test findings do not demonstrate the presence of pneumoconiosis or a chronic respiratory or pulmonary impairment [under the liberal interim criteria] . . . there is an *inference* that the claimant is not totally disabled due to such cause. . . .' This 'inference'— which does not rise to the level of a rebuttable presumption—logically flows from the demonstrated fact that 'only in the unusual case will' an individual who shows neither simple pneumoconiosis by x-ray nor borderline lung impairment under the interim studies 'be totally disabled due to lung impairment.' "

■ We conclude for several reasons that Social Security Ruling 73–37 is unreasonable and thus may not be depended upon by the Secretary in his decision in these cases.

First, the failure to prove a positive does not necessarily infer that the negative is true as the regulation requires. The Act does not suggest any such conclusion. The Ruling provides that if X-rays fail to establish black lung disability and if the claimant fails to meet the tabulated values for ventilatory function tests as established in the regulations, then "there is an inference that the miner is not totally disabled." Aside from the abstract difficulty with the ruling, it is apparent that it is illogical in practice. For no matter what the X-ray or ventilatory function tests may affirmatively show, the inference is always negative if the first merely fails of its sought conclusion and the second merely fails to reach the tabulated values. Thus, we think that requiring the inference is neither authorized by statute nor supported by common knowledge, and is unreasonable.[2] See *Hubbard v. Califano*, 582 F.2d 319, 323, 325 (dissenting opinion) (4th Cir. 1978). Cf. *Prokes v. Mathews*, 559 F.2d 1057 (6th Cir. 1977).

The Ruling also sets up an inference that conflicts with the legislative purpose of Congress in enacting the 1972 amendments to the Act. *Bozwich v. Mathews*, 558 F.2d 475 (8th Cir. 1977). The effect of the Ruling is to require a claimant to produce enough evidence to overcome an inference of non-disability that is drawn from the fact that X-ray or ventilatory function tests results submitted by the claimant failed to establish total disability under the interim regulatory criteria. This additional hurdle

2. Our decision does not imply that a trier of fact uninhibited by Ruling 73–37 might not take any negative inference from the failure of X-rays or ventilatory function tests to establish total disability under the interim criteria. These facts might be considered by a trier of fact along with all the other evidence in the case and any justifiable inferences taken. Where we differ with the Secretary is the requirement of Ruling 73–37 that ". . .

there is an inference that the miner is not totally disabled." This direction is no less than peremptory. Were Ruling 73–37 phrased permissively, of course, it would not be susceptible to the use to which the Secretary puts it, for the inference might be taken, if justified by the evidence, in all events, under general law. The Secretary uses the Ruling to require the miners to "overcome" the inference.

placed in the path of a claimant before he can show total disability is inapposite to the 1972 amendments. The Senate Committee on Labor and Public Welfare specifically stated that "[b]ecause of the continuing recognition of the fact that X-ray evidence is not always satisfactory, the Committee retained a provision of the House bill which prohibits the denial of a claim solely on the basis of the results of a chest roentgenogram. . . . Testimony has . . . indicated that a negative X-ray is not proof positive of the absence of pneumoconiosis." S.Rep. No. 92–743, 92d Cong., 2d Sess., *reprinted in* [1972] U.S.Code Cong. & Ad. News, pp. 2305, 2314. The Committee further stated that "[t]he art of medical diagnosis of coal miners' respiratory impairments is not so precise that a miner's benefit should stand or fall on the basis of a single test. Every available medical tool should be used to assist a miner in successfully pursuing his claim for benefits. This provision [of § 923(c)(4)] seeks to expand the number of tools available for that purpose." [1972] U.S.Code Cong. & Ad.News at 2319. The practical effect of Social Security Ruling 73–37 is to do precisely what Congress sought to prohibit, to deny benefits based on only two medical tests.[3] See *Bozwich*, p. 480. See also *Gober v. Mathews*, 574 F.2d 772, 778 (3d Cir. 1978), which holds that, at least where there is medical testimony that a disabling respiratory disease is present, under the 1972 amendments the Secretary may not infer, merely from a failure to submit qualifying X-rays and ventilatory studies, that a miner is unlikely to be totally disabled because of respiratory or pulmonary disease.

Additionally, the Ruling is contrary to 30 U.S.C. § 923(b) which requires the Secretary to consider "all relevant evidence" in determining the validity of claims under Part B of the Act. All relevant evidence, as defined in § 923(b), includes, but is not limited to, X-ray examinations and pulmo-

nary (ventilatory) function studies. Included in terms in § 923(b), for example, are also blood gas studies, electrocardiograms, physical performance tests, medical history, evidence submitted by claimant's physician, and affidavits of wives and others. Social Security Ruling 73–37, then, violates the letter and intent of § 923(b) by placing a premium on X-rays and ventilatory function studies at the expense of other relevant evidence required by statute to be considered. The Ruling, by establishing an inference of non-disability solely on the basis of X-ray or ventilatory function tests results, violates the Congressional mandate contained in § 923(b) that "all relevant evidence" be considered in determining the validity of claims for black lung benefits. Cf. *Prokes v. Mathews*, 559 F.2d 1057, 1062 (6th Cir. 1977).

We therefore remand both cases to the district court for further remand to the Secretary for a redetermination of Hubbard's and Taylor's entitlement to black lung benefits absent any application of Social Security Ruling 73–37. In light of this disposition of the cases, we do not pass upon the other issues raised on appeal. However, with regard to the dispute over the length of time Hubbard and Taylor worked in the mines, we believe both sides should be afforded the opportunity to present such additional evidence as they may be so advised because the length of time the plaintiffs worked in the mines affects the availability of various presumptions. Additionally, with regard to any dispute over the weight to be accorded contradictory X-ray evidence and the weight to be accorded post-June 30, 1973 evidence, we invite the Secretary's attention to our recent decisions in *Sharpless v. Califano*, 585 F.2d 664 (4th Cir. 1978); *Hubbard v. Califano*, 582 F.2d 319 (4th Cir. 1978); *Petry v. Califano*, 577 F.2d 860 (4th Cir. 1978); *Arnold v. Secretary*, 567 F.2d 258 (4th Cir. 1977); and *Talley v. Mathews*, 550 F.2d 911 (4th Cir. 1977).

*VACATED and REMANDED.*

---

**3.** Even the Ruling itself recognizes that ventilatory function tests do not conclusively show the absence of a pulmonary or respiratory impairment since such tests merely demonstrate the ability to move air in and out of the lungs and not "necessarily . . . the ability of [a] claimant's lungs to transfer oxygen to his bloodstream." Social Security Ruling 73–37, explanatory text at p. 4.