828 F.2d 17
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
ISLAND CREEK COAL COMPANY, Petitioner,
v.
Samuel DAMERON, Respondent,
Director, Office of Workers' Compensation Programs, United
States Department of Labor, Intervenor.
 No. 85-2360
 United States Court of Appeals, Fourth Circuit.
 Submitted June 30, 1987.
Decided August 21, 1987.
 
 Martin E. Hall, Jackson, Kelly, Holt & O'Farrell, on brief, for petitioner.
 George R. Salem, Deputy Solicitor, Donald S. Shire, Associate Solicitor, J. Michael O'Neill, Counsel for Appellate Litigation, Thomas J. Holzman, Assistant Counsel for Appellate Litigation, Jeffrey J. Bernstein, Attorney, U.S. Department of Labor, on brief, for intervenor.
 Before WIDENER and SPROUSE, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Island Creek Coal Company appeals a decision of the Benefits Review Board (BRB, or the Board) imposing liability for disability benefits due its former employee, Samuel Dameron, pursuant to the Black Lung Benefits Act (as amended), 30 U.S.C. Secs. 901-945 (the Act). We find that the facts and legal arguments are adequately presented in the parties' briefs and the record on appeal and that the decisional process would not be significantly aided by oral argument; accordingly, we dispense with oral argument pursuant to Fed. R. App. P. 34(a) and Loc. R. 34(a). We also find that the Board's decision is not supported by substantial evidence; consequently, we reverse.
 
 
 2
 * Samuel Dameron retired from coal mining in June 1976, after having worked for Island Creek Coal Company for 42 years. He subsequently applied for disability benefits allowable under the Act, claiming that he suffered complicated pneumoconiosis, an irreversibly degenerative disease of the respiratory system arising from prolonged exposure to coal dust. There is no dispute in this appeal as to whether Dameron is entitled to black lung disability benefits; the parties have stipulated that the suffers complicated pneumoconiosis and the Board affirmed the administrative law judge's (ALJ's) decision and order awarding benefits. The parties' stipulation to the presented of 'complicated pneumoconiosis' is significant in that the Act and the regulations create for that condition an irrebuttable presumption of total disability due to pneumoconiosis. 30 U.S.C. Sec. 921(c)(3); 20 C.F.R. Sec. 410.418 (1980).
 
 
 3
 The sole issue before this Court is whether Dameron's lung disease was first diagnosed as complicated pneumoconiosis prior to January 1, 1970. If so, then the Black Lung Disability Trust Fund[1] is liable for Dameron's disability benefits; if not, then the appellant, Island Creek Coal Company, is liable for the benefits.[2]
 
 II
 
 4
 This issue arose from evidence in the record that Dameron was briefly exposed to coal dust in the course of his employment from January 1 through August 31, 1970, although the evidence also disclosed that this exposure was, in Dameron's words, 'Relatively light due to the use of a respirator in most cases when entering areas with high dust concentration,' and occurred only 'once per week' while he performed supervisory and managerial tasks.
 
 
 5
 The Director contended below, and here on appeal, that Island Creek Coal Company failed to prove that Dameron's complicated pneumoconiosis was not caused, at least partially, by his occasional exposures to coal dust during the first eight months of 1970.
 
 
 6
 Appellant countered that it is not liable for payment of Dameron's disability benefits because the miner was totally disabled, according to the terms of the Act and the regulations, by complicated pneumoconiosis prior to January 1, 1970, and because his limited exposure to coal dust during the brief period after that date would have been insufficient to cause or contribute to his disability.
 
 
 7
 Appellant's proof included a 1958 report by Dr. J. D. Battle Jr. which concluded that Dameron then suffered 'asymptomatic conglomerate silicosis.' (Emphasis added.) Dr. Battle's 1958 report recited that Dameron's lung disease was first detected in 1948, based on X-ray interpretations rendered by Dr. Howard S. VanOrdstrand, a specialist in lung diseases. Subsequent examinations and X-ray interpretations in 1959, 1960, 1961, and 1963 by Drs. Battle and VanOrdstrand, all of which were received in evidence, reaffirmed the 1958 diagnosis of 'asymptomatic conglomerate silicosis.'
 
 
 8
 In 1982 Drs. Battle and VanOrdstrand reviewed Dameron's medical records in their clinic and revised their earlier diagnoses. In their 1982 report, which was admitted as evidence during the administrative proceedings below, the two physicians joined in stating that
 
 
 9
 I find on reviewing Mr. Damerons [sic] record that his entire occupational history referable to harmful dust exposure was all in the coal mines. For this reason I must correct my diagnosis (in having seen him between the dates of 1958 and May 1963) from the prior listing of conglomerate silicosis to the correct one of complicated coal workers' pneumoconiosis (progressive massive fibrosis).
 
 
 10
 I can state that subsequent to having seen Mr. Dameron all of us in my environmental specialty have learned that the exposure to coal mine dusts will cause completely the x-ray reaction as has occurred to Mr. Dameron (and which is a similar x-ray picture to that occurring in other dusty occupations and where the exposure is known, for example, to be completely due to silicon dioxide).
 
 
 11
 I can unequivocally state that my correct diagnosis on Mr. Dameron now is as mentioned above from my further experience and knowledge learned while serving for the past 11 years on the Task Force on Pneumoconiosis (CWP) for NIOSH.[3]
 
 
 12
 In summary, please consider this as a supplemental and corrected report with reference to my pulmonary consultations on Mr. Dameron between the dates of May 1958 and May 1963. He does indeed have the progressive massive fibrosis of complicated coal workers pneumoconiosis. Radiologically the opacities in his lungs are much greater than one cm. in diameter.[4]
 
 
 13
 Another examining physician, Dr. George O. Kress, a specialist in industrial pulmonary medicine, stated in his written evaluation of Dameron's condition that
 
 
 14
 [I]t is my opinion that . . . Mr. Dameron acquired his coal worker's pneumoconiosis in the years prior to 1958 and very probably prior to 1948. . . . [I]t is my opinion that this gentleman's pneumoconiosis did not arise in part or totally out of his employment after December 31, 1969.[5]
 
 
 15
 The record is devoid of any medical evidence in rebuttal to Drs. Battle's, VanOrdstrand's, and Kress's revised diagnoses.
 
 
 16
 The ALJ characterized Drs. Battle's and VanOrdstrand's 1982 report as 'self-serving and . . . not sufficiently reasoned to establish the existence of complicated pneumoconiosis prior to December 31, 1969.' Similarly, he faulted Dr. Kress's report as insufficiently reasoned because the doctor 'did not state . . . that . . . [Dameron] was disabled by pneumoconiosis prior to 1958 or in the alternative that . . . [Dameron] had complicated pneumoconiosis prior to 1958.' The ALJ concluded that appellant 'has not shown to a medical certainty, or even probability that. . . [Dameron's] exposure to coal dust after January 1, 1970, did not contribute to or aggavate [sic]. . . [Dameron's] existing pneumoconiosis.'
 
 
 17
 Accordingly, the ALJ found that appellant failed to establish that Dameron had complicated pneumoconiosis prior to December 31, 1969, and assessed liability for disability payments against appellant.
 
 
 18
 The Benefits Review Board affirmed the ALJ's decision and order, concluding that it was supported by substantial evidence.
 
 III
 
 19
 The Benefits Review Board's scope of review of the ALJ's decision and order is governed by statute and regulation:
 
 
 20
 The Benefits Review Board is not empowered to engage in a de novo proceeding or unrestricted review of a case brought before it. The Board is authorized to review the findings of fact and conclusions of law on which the decision or order appealed from was based. Such findings of fact and conclusions of law may be set aside only if they are not, in the judgment of the Board, supported by substantial evidence in the record considered as a whole or in accordance with law.
 
 
 21
 33 U.S.C. Sec. 921(b)(3), incorporated into the Black Lung Act by 30 U.S.C. Sec. 932(a); 20 C.F.R. Sec. 802.301 (1980). Zbosnik v. Badger Coal Co., 759 F.2d 1187, 1189 (4th Cir. 1985); Wilson v. Benefits Review Board, 748 F.2d 198, 199-200 (4th Cir. 1984). On appeal we consider, as did the Board, whether there was substantial evidence to support the ALJ's decision and order. Zbosnik, 759 F.2d at 1189-90; see also Eplion v. Director, 794 F.2d 935, 936 (4th Cir. 1986).
 
 
 22
 Our review of the record on appeal discloses that the ALJ's decision and order assessing liability against appellant for Dameron's disability benefits is not supported by substantial evidence. To the contrary, we find it undisputed from the reasoned medical evidence that Samuel Dameron (i) developed complicated pneumoconiosis prior to January 1, 1970, and (ii) that his brief exposures to coal dust during an eight-month period after that date were not causative factors of this condition.
 
 
 23
 Drs. Battle and VanOrdstrant tracked Dameron's lung condition for more than a decade prior to 1970. They consistently and unequivocally diagnosed their patient's lung condition as 'asymptomatic conglomerate silicosis,' a medical diagnostic classification they in effect identified as being the equivalent of the term of art appearing in the Act as 'complicated pneumoconiosis.' There is no question but that Dameron was afflicted in 1958--perhaps even as early as 1948, or sooner--with complicated pneumoconiosis, although he apparently did not then exhibit the symptoms usually associated with the disease.
 
 
 24
 Similarly, Dr. Kress's professional opinion, based on his examination of Dameron, Dameron's statements to him, and his evaluation of Drs. Battle's and VanOrdstrand's records, is uncontradicted in its conclusion that (i) his patient developed pnermoconiosis well before January 1, 1970, and (ii) that his employment subsequent to that date did not contribute to the disease. 'This Court places great reliance on a claimant's treating physician, . . . especially where the Secretary neither has the claimant examined nor medically rebuts the tests upon which claimant's physicians rely.' Hubbard v. Califano, 582 F.2d 319, 323 (4th Cir. 1978); see also King v. Califano, 615 F.2d 1018, 1020 (4th Cir. 1980).
 
 
 25
 The ALJ's conclusion that these physicians' professional opinions as to the severity and date of onset of Dameron's complicated pneumoconiosis is merely argumentative, is without any medical foundation, and is not supported by substantial evidence. Accordingly, we reverse and remand to the Board with instructions that liability for all of Samuel Dameron's black lung disability benefits be assessed against the Black Lung Disability Trust Fund.
 
 
 26
 REVERSED AND REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 The Black Lung Disability Trust Fund was established by the Black Lung Benefits Revenue Act of 1977, and is liable for the payment of disability benefits when the otherwise-liable operator fails to make payment after a certain period of time, when no operator is identified as liable, or when the disabled miner's last coal mine employment was before January 1, 1970. 26 U.S.C. Sec. 9501(d)(1)
 
 
 [2]
 The Act provides that 'no benefit shall be payable by any operator on account of . . . total disability due to pneumoconiosis (1) which did not arise, at least in part, out of employment in a mine during a period after December 31, 1969 when it was operated by such operator; . . ..' 30 U.S.C. Sec. 932(c)
 
 
 [3]
 The National Institute for Occupational Safety and Health, an agency of the U.S. Public Health Service
 
 
 [4]
 The regulations and the Act make the size of pulmonary opacities quite important:
 There is an irrebuttable presumption that a miner is totally disabled due to pneumoconiosis . . . if he is suffering . . . from a chronic dust disease of the lung which:
 (a) When diagnosed by chest roentgenogram (X-ray), yields one or more large opacities (greater than 1 centimeter in diameter) and would be classified in Category A, B, or C (that is, as 'complicated pneumoconiosis'), . . ..
 
 
 [20]
 C.F.R. Sec. 410.418 (1980); 30 U.S.C. Sec. 921(c)(3)
 
 
 [5]
 Dr. Kress's diagnosis and evaluation were based both on his examination of Dameron, statements made to him by Dameron, and on his review of Drs. Battle's and VanOrdstrand's medical reports