911 F.2d 723
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Virgil MARTIN, Petitioner,
v.
E & S COAL COMPANY, Director, Office of Workers Compensation
Programs, United States Department of Labor, Respondents.
 No. 89-3288.
 United States Court of Appeals, Fourth Circuit.
 Argued April 6, 1990.
Decided July 18, 1990.
 
 On Petition for Review of an Order of the Benefits Review Board. (87-2013-BLA)
 Robert F. Cohen, Jr., Cohen, Abate & Cohen, Fairmont, W.V., for petitioner.
 Harold Stanford Yost, Bridgeport, W.V. (argued), for respondents; Sylvia T. Kaser, Dorothy L. Page, Office of the Solicitor, United States Department of Labor, Washington, D.C., on brief.
 Ben.Rev.Bd.
 REVERSED AND REMANDED WITH INSTRUCTIONS.
 Before ERVIN, Chief Judge, and K.K. HALL and CHAPMAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Virgil Martin petitions for review of a decision of the Benefits Review Board ("BRB") of the Department of Labor, which affirmed the denial of benefits to petitioner under the Black Lung Benefits Act, 30 U.S.C. Secs. 901 et seq. We reverse the Board's decision and remand with instructions to award benefits.
 
 I.
 
 2
 Petitioner Virgil Martin was born in 1911. From 1937 until July 1, 1973, Martin worked in various small underground coal mines, primarily as a coal loader. Because the mines in which he worked typically employed few miners, Martin often had to perform varied and strenuous duties, including digging coal with a pick and lifting objects that weighed over 100 pounds. During his last few years of work, he often had to stop to rest because of shortness of breath. He continued to have breathing problems after his retirement, and suffered a heart attack in 1975. He smoked a pack of cigarettes a day from early adulthood until 1980.
 
 
 3
 Martin filed a claim for black lung benefits on September 3, 1974. The deputy commissioner made an initial finding of entitlement, but the employer-respondent, E & S Coal Company, objected; accordingly, the matter was referred to an administrative law judge ("ALJ") on April 20, 1984. Nearly 12 years after the claim was filed, on May 21, 1986, a hearing was held before an ALJ. On October 3, 1986, the ALJ denied benefits. In response to petitioner's request for reconsideration, the ALJ issued a supplemental decision on June 22, 1987, again denying benefits. Petitioner then appealed to the BRB, which upheld the ALJ's decision on May 16, 1989. He now petitions for review.
 
 
 4
 The record contains quite a bit of medical evidence. Out of six interpretations of x-rays, only one was positive, and that conclusion was later refuted by a "B" reader. There were four pulmonary function studies, but two of them did not yield reliable results because of Martin's failure to give optimal effort or to complete the test. The first reliable test yielded results that were close to, but did not meet, those which would qualify under the regulatory tables for Martin's reported height (71"). Similarly, the second test results just missed the qualifying table values; however, Martin's reported height for this test was 178 cm (just over 70"), and the ALJ interpreted the reported height as 70". At a height of 71", the results of the second test would have been qualifying. Three blood gas studies were also performed, none of which qualified under the table values.[1]
 
 
 5
 In 1975, the West Virginia Occupational Pneumoconiosis Board diagnosed petitioner with occupational pneumoconiosis resulting in twenty per cent pulmonary functional impairment. On February 5, 1976, Martin was examined by Dr. D.M. Murphy. Dr. Murphy diagnosed chronic bronchitis with minimal respiratory impairment. In Dr. Murphy's opinion, Martin's condition was unrelated to coal mine employment, though he gave no explanation of the basis for this opinion.
 
 
 6
 Dr. J.A. Bellotte examined the claimant on April 25, 1980. He diagnosed chronic obstructive pulmonary disease and chronic bronchitis. He further found that these respiratory and pulmonary impairments limited claimant to walking six blocks, climbing two flights of stairs slowly, and lifting and carrying fifty pounds. Dr. Bellotte opined that Martin's condition was unrelated to coal mine employment, because "no definite evidence of pneumoconiosis [was] seen on his x-ray."
 
 
 7
 Martin was also examined by Dr. D.L. Rasmussen on November 23, 1976. Dr. Rasmussen found that Martin had "significant loss of respiratory functional capacity" and a "sufficient loss of lung function to render him incapable of working as a coal miner or in similar employment." In 1986, Dr. Rasmussen reviewed his own test results, as well as the reports of the West Virginia Board, Dr. Murphy, and Dr. Bellotte, and issued a supplementary report. In it, Dr. Rasmussen stated that his opinion regarding claimant's disability was based on comparison of the results of blood gas studies done at rest and after exercise, which showed blood gas abnormalities at exercise levels far below those required by coal mine employment. Dr. Rasmussen pointed out that neither Dr. Murphy nor Dr. Bellotte had performed blood gas studies with exercise. Furthermore, Dr. Rasmussen explained the physiological basis for his opinion that coal mine employment, rather than cigarette smoking, was the primary cause of Martin's impairment. Martin's gas exchange impairment exceeded his ventilatory impairment. Cigarette smoking generally produces the opposite result. Dr. Rasmussen concluded that Martin is totally disabled because of a respiratory impairment that is significantly related to his 35 years toiling in coal mines.
 
 II.
 
 8
 In his petition for review, Martin first argues that the ALJ and BRB ignored the broad legal definition of pneumoconiosis and instead evaluated his claim under the more narrow medical definition. After review of the record, we must agree.
 
 
 9
 The Act defines pneumoconiosis as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. Sec. 902(b). The Department of Labor's regulations define a "disease arising out of coal mine employment" as "any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or aggravated by, dust exposure in the coal mines." 20 C.F.R. Sec. 727.202.
 
 
 10
 These provisions spell out modifying presumptions which serve to endow the term "pneumoconiosis" with a broad definition, one that effectively allows for the compensation of miners suffering from a variety of respiratory problems that may bear a relationship to their employment in the coal mines.
 
 
 11
 Rose v. Clinchfield Coal Co., 614 F.2d 936, 938 (4th Cir.1980).
 
 
 12
 There is no dispute that Martin has a chronic respiratory impairment. Even the physicians upon whom the ALJ and BRB relied in denying benefits diagnosed chronic bronchitis. The evidence in the record regarding whether this impairment was related to or aggravated by Martin's coal mine employment favors the petitioner. Dr. Rasmussen concluded that because Martin's gas exchange impairment significantly exceeds his ventilatory impairment, his condition can be more reasonably attributed to coal mine employment rather than cigarette smoking, where the opposite pattern (ventilatory greater than gas exchange impairment) would be expected. Dr. Murphy simply checked a box marked "No" to express his opinion regarding whether claimant's impairment was related to mine employment. The record is silent as to the basis for this opinion. Dr. Bellotte checked a similar "No" box, but did posit a medical rationale for his opinion: "No definite evidence of pneumoconiosis seen on his x-ray."
 
 
 13
 Aside from the Act's disdain of denial of claims based solely on negative x-rays[2], Dr. Bellotte's rationale illustrates that he did not consider the legal definition of pneumoconiosis. Though he had just concluded that claimant has chronic bronchitis--legally "pneumoconiosis" if related to dust exposure in coal mines--Dr. Bellotte simply declared that Martin's impairment was not pneumoconiosis. His declaration had nothing to do with the question he had been asked--whether the claimant's admitted chronic respiratory disease was related to coal dust exposure. Instead, it appears that Dr. Bellotte (and ultimately the ALJ and BRB) simply substituted his own restrictive definition of pneumoconiosis for the deliberately broad definition supplied by Congress.
 
 
 14
 Therefore, Dr. Rasmussen's opinion as to the relationship between Martin's mine work and his chronic respiratory disease essentially stands uncontradicted in the record. Inasmuch as the claimant labored underground for over 35 years, dating to before World War II, we are not surprised. Although no length of employment in the mines creates a presumption of disability in and of itself, length of employment is relevant to whether a claimant suffers from a totally disabling respiratory or pulmonary impairment. Hubbard v. Califano, 582 F.2d 319, 323 (4th Cir.1978). Obviously, the greater the amount of time a claimant spent in an underground mine, especially before passage of the Mine Safety and Health Act in 1969, the more likely it is that he has been exposed to detrimental quantities of coal dust.
 
 III.
 
 15
 The ALJ evaluated Martin's claim during the reign of our decision in Stapleton v. Westmoreland Coal Co., 785 F.2d 424 (4th Cir.1986) (en banc), rev'd sub nom. Mullins Coal Co. v. Director, OWCP, 484 U.S. 135 (1987). Accordingly, the ALJ found that the interim presumption of entitlement under 20 C.F.R. Sec. 727.203(a)(4) was invoked by a single piece of evidence--Dr. Rasmussen's initial report. Though the Supreme Court's decision in Mullins increased the initial burden on a claimant to establish his right to invocation of the interim presumption, the BRB did not remand for reconsideration. Instead, the BRB chose to affirm the decision based on rebuttal of the presumption.
 
 
 16
 Respondent urges us to remand the presumption invocation issue should we reverse the BRB. We see no reason to do so. The evidence is uncontradicted that Martin suffers from chronic pulmonary and respiratory disorders. The unequivocal findings of Dr. Rasmussen and the physical limitations noted by Dr. Bellotte convince us that Martin proved the existence of a totally disabling respiratory or pulmonary impairment by the preponderance of the evidence, thus satisfying Mullins, and is entitled to the presumption under 20 C.F.R. Sec. 727.203(a)(4).
 
 IV.
 
 17
 The ALJ found that the interim presumption was rebutted by evidence that Martin is capable of doing his usual coal mine or similar work (20 C.F.R. Sec. 727.203(b)(2)), that the disability did not arise in whole or in part out of coal mine employment (20 C.F.R. Sec. 727.203(b)(3)), and that the claimant does not have pneumoconiosis (20 C.F.R. Sec. 727.203(b)(4)). The BRB affirmed only the (b)(4) rebuttal, and did not reach the other two grounds relied on by the ALJ. We have recently held that application of 20 C.F.R. Sec. 727.203(b)(4) rebuttal to claims filed before April 1, 1980, violates 30 U.S.C. Sec. 902(f). Taylor v. Clinchfield Coal Co., 895 F.2d 178 (4th Cir.1990); accord, Taylor v. Peabody Coal Co., 892 F.2d 503 (7th Cir.1989), petition for certiorari filed, No. 89-1696 (May 2, 1990). But see Youghiogheny and Ohio Coal Co. v. Milliken, 866 F.2d 195 (6th Cir.1989); Bethenergy Mines, Inc. v. Director, OWCP, 890 F.2d 1295 (3d Cir.1989), petition for certiorari filed, No. 89-1714 (May 7, 1990).[3] Dicta in Pittston Coal Group v. Sebben, 488 U.S. 105 (1988), strongly intimates that (b)(3) rebuttal is unavailable as well.
 
 
 18
 Inasmuch as the BRB decision rests upon an untenable ground, we must reverse. We cannot uphold agency action on grounds not relied upon by the agency. Securities and Exchange Comm'n v. Chenery Corp., 318 U.S. 80, 95 (1943). Therefore, the question devolves to whether this case should be remanded for BRB consideration of the rebuttal grounds that it did not reach, or simply with instructions to award benefits.
 
 
 19
 Though the ALJ found rebuttal established under 20 C.F.R. Secs. 727.203(b)(2) and (b)(3), the BRB did not see fit to endorse these findings, and our review of the record discloses that there is not substantial evidence[4] to support them. The evidence is overwhelming that Martin is unable to perform his usual coal mine work.[5] Even if (b)(3) causation rebuttal is still available in the wake of Sebben and Taylor, the unexplained opinions of Drs. Murphy and Bellotte cannot overcome Dr. Rasmussen's opinion, supported by objective physiological criteria, that Martin's mine work played a significant role in the development of his chronic respiratory and pulmonary impairments.
 
 
 20
 This claim is nearly sixteen years old. We have hesitated in the past to remand unjustifiably denied claims to this extremely slow administrative process. See Hubbard, 582 F.2d at 323; Petry v. Califano, 577 F.2d 860, 867 (4th Cir.1978). Because the record before us is adequate, and we find that the denial of benefits to Martin is not supported by substantial evidence, we reverse and remand with instructions to award benefits.
 
 
 21
 REVERSED AND REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 The tables of qualifying values for ventilatory and blood gas studies are found at 20 C.F.R. Secs. 727.203(a)(2)-(3). Though these tables provide one means for a miner to qualify for the interim presumption, failure to meet them does not "conclusively show the absence of pulmonary or respiratory impairment." Hubbard v. Califano, 582 F.2d 319, 322 n. 6 (4th Cir.1978). In a borderline case such as this one, where a fluctuation in the claimant's reported height makes the difference in qualifying or not, the test results have little force if offered to rebut the interim presumption
 
 
 [2]
 See 30 U.S.C. Sec. 923(b). This provision was added to the Act in 1972, partly in response to research showing that "approximately 25 percent of a random sample of some 200 coal miners whose medical records based upon x-ray findings showed no coal-worker's pneumoconiosis were found on post mortem examination to have the disease." Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 32 n. 34 (1976), quoting S.Rep. No. 92-743, 1972 U.S.Code Cong. & Admin.News at 2316
 
 
 [3]
 Even if (b)(4) rebuttal were permissible, there is not substantial evidence to support the BRB's ruling. Martin admittedly has chronic respiratory and pulmonary impairments which, if significantly related to or aggravated by coal mine employment, satisfy the legal definition of pneumoconiosis. The unexplained check mark of Dr. Murphy and the inapposite explanation of Dr. Bellotte cannot begin to overcome the reasoned opinion of Dr. Rasmussen that 35 years of dust exposure did indeed significantly aggravate Martin's condition
 
 
 [4]
 Though we review questions of law de novo, the ALJ's factual findings must be affirmed if they are supported by substantial evidence. Amigo Smokeless Coal Co. v. Director, OWCP, 642 F.2d 68, 69 (4th Cir.1981)
 
 
 [5]
 The cause of disability is irrelevant to the (b)(2) inquiry. "There is no question of causation in a proper Sec. 727.203(b)(2) rebuttal.... Causation is addressed in Sec. 727.203(b)(3). Once the miner's disability is conceded, then the question arises whether the disability is unrelated to mine work." Sykes v. Director, OWCP, 812 F.2d 890, 894 (4th Cir.1987)