Clarence C. SHARPLESS, Appellant,

v.

Joseph A. CALIFANO, Jr., Secretary of the Department of Health, Education and Welfare, Appellee.

No. 77–1219.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 12, 1978.

Decided Oct. 16, 1978.

Arold H. Ripperger, Baltimore, Md. (Mary Ellen Brooke, Baltimore, Md., William W. Grant, on brief), for appellant.

Fred Marinucci, Asst. Regional Atty., Dept. of Health, Education & Welfare, Philadelphia, Pa. (Jervis S. Finney, U. S. Atty., Virginia S. Draper, Asst. U. S. Atty., Baltimore, Md., Stephanie W. Naidoff, Regional Atty., Philadelphia, Pa., and Andrew Plump, Third Year Law Student, on brief), for appellee.

Before WINTER, RUSSELL and WIDENER, Circuit Judges.

WINTER, Circuit Judge:

The principal issue which concerns us in this appeal is the right of the Secretary and his designees, in the course of administrative proceedings to determine an entitlement to black lung benefits under the Federal Coal Mine Health and Safety Act, 30 U.S.C. §§ 901 *et seq.*,[1] to make a credibility determination between so-called "A" and "B" readers of chest roentgenograms (x-rays) as to whether such x-rays establish the existence of pneumoconiosis. We hold that the Secretary is authorized to make this determination and, as a consequence, we affirm the order of the district court upholding the Secretary's denial of black lung benefits in this case.

I.

The claimant, Clarence C. Sharpless, is a former mine worker whose employment in coal mines, principally as a coal loader, dates back to 1924. He ceased working in 1970 for reasons of health. He currently receives retirement benefits from both Social Security and his union. He has never sought disability benefits under Social Security or a State Workmen's Compensation Act.

He first sought black lung benefits under the Federal Coal Mine Health and Safety Act in 1970. After a lengthy administrative process involving repeated rejections and reconsiderations of his claim, Sharpless was finally denied benefits by the Secretary on April 7, 1976. He then sought judicial review pursuant to 30 U.S.C. § 923(b). The district court upheld the Secretary's denial of benefits because it deemed the denial supported by substantial evidence.

II.

To receive benefits for total disability as a result of pneumoconiosis, a claimant must

1. These sections, popularly called the Black Lung Act, were recently amended by the Black Lung Benefits Reform Act of 1977, Pub.L.No. 95–239, 92 Stat. 95 (1978). Having concluded that the amendments are not to be applied retroactively, *Treadway v. Califano,* 584 F.2d 48 (4 Cir. 1978), we decide this case in accordance with the preexisting law. Since we decide against Sharpless, we call attention to the fact that § 15 of the amendments grants him the right to have his claim administratively reviewed under the new proof provisions but subject to a limitation of benefits.

establish that he suffers from "pneumoconiosis [which] prevents him from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he previously engaged with some regularity and over a substantial period of time." 30 U.S.C. § 902(f). "Pneumoconiosis" is defined by 30 U.S.C. § 902(b) as "a chronic dust disease of the lung arising out of employment in a coal mine."

By the provisions of 30 U.S.C. § 921(b), the Secretary is required by regulation to prescribe the standards for determining whether a miner is totally disabled because of pneumoconiosis. Moreover, when Congress enacted the 1972 amendments to the black lung benefits program, it took note of the fact that there existed a great backlog of claims. Congress requested the Secretary to adopt "interim evidentiary rules" [2] (i. e., presumptions), making it easier for claimants to establish their entitlement to benefits. The Secretary did so by promulgating the regulations codified in 20 C.F.R. § 410.490 (1977).

So far as pertinent here, § 410.490 creates a rebuttable presumption that a miner who files a claim for benefits before July 1, 1973, is totally disabled due to pneumoconiosis if either (a) a chest x-ray establishes the existence of pneumoconiosis, § 410.-490(b)(1)(i), or (b) where the miner has been employed underground for at least fifteen years, ventilatory tests establish the existence of chronic respiratory or pulmonary disease, § 410.490(b)(1)(ii). If either of these evidentiary requirements is met, the miner must still show that his impairment "arose out of coal mine employment," § 410.490(b)(2); but if he establishes the presence of chronic lung disease through ventilatory tests and has been employed as a coal miner for at least ten years, there arises a second presumption that his pneumoconiosis resulted from mine employment. § 410.490(b)(3).

### III.

In the instant appeal, the principal argument advanced by Sharpless is that he established the existence of pneumoconiosis by x-ray, and therefore he is entitled to the presumption of § 410.490(b) that he is totally disabled as a result of the disease.[3] The argument is predicated upon this factual basis:

Sharpless had chest x-rays taken on October 26, 1963, March 30, 1971, November 13, 1973, and March 4, 1974.[4] The 1963 x-ray was read as negative for pneumoconiosis by an "A" reader. An "A" reader interpreted the 1971 x-ray as showing the presence of small opacities, irregular, but three "B" readers found the film to be completely negative, of poor film screen contact, and of poor film quality, but not establishing the presence of pneumoconiosis, respectively.[5]

The 1973 x-ray was read by an "A" reader as showing the presence of small opacities, irregular, and the presence of aortic sclerosis, but three "B" readers did not read the film as showing pneumoconiosis; in-

---

**2.** The interim rules apply only to miners who claimed benefits before July 1, 1973 and survivors who claim benefits with regard to a miner who died before January 1, 1974. With respect to claims filed on and after January 1, 1974, administration of the Act passes from the Secretary of HEW to the Secretary of Labor.

**3.** He does not dispute that ventilatory tests failed to establish the existence of chronic lung disease and that therefore he can claim neither a presumption of total disability nor a presumption of employment-related disability as a result of them.

**4.** A fourth x-ray was taken October 3, 1975. It purportedly showed simple pneumoconiosis. It was considered by the Appeals Council which

concluded that it failed to relate back to the June 30, 1973 jurisdictional cut-off. If the Secretary correctly concluded that the earlier x-rays did not prove the existence of pneumoconiosis, then we think it follows that the Appeals Council correctly determined that the 1975 x-ray could not be given retroactive effect.

**5.** Readers' ratings are given by the National Institute of Occupational Safety and Health, United States Public Health Service. The record fails to disclose how ratings are issued and their precise meaning. In oral argument, however, counsel seemed to agree that a "B" rating denotes a reader of greater experience and proficiency.

deed, one thought that it demonstrated the absence of that disease. The 1974 x-ray was read by an "A" reader as showing small opacities, irregular, but, once again, two "B" readers found it completely negative for the presence of pneumoconiosis.

Essentially, Sharpless contends that since the same "A" reader read the 1971, 1973 and 1974 x-rays to show the presence of pneumoconiosis, he is entitled to the presumption of total disability due to pneumoconiosis set forth in § 410.490(b), even though the presumably more qualified "B" readers concluded that the films did not demonstrate the presence of the disease. We reject the argument.

 In order to be entitled to the presumption that he is totally disabled from pneumoconiosis, Sharpless was obliged to prove the existence of pneumoconiosis before July 1, 1973. We know of nothing in the Act, or in the 1972 amendments, or in their legislative history, to indicate that this fact is not required to be proved by a preponderance of the evidence as is every other fact which is not presumed. The district courts which have considered the problem in the context of proof of the fact of pneumoconiosis also agree. *See, e. g., Welsh v. Weinberger,* 407 F.Supp. 1043 (D.Md.1975); *Ward v. Mathews,* 403 F.Supp. 95 (E.D. Tenn.1975); *Campbell v. Weinberger,* 402 F.Supp. 1147 (N.D.W.Va.1975); *Harness v. Weinberger,* 401 F.Supp. 9 (E.D.Tenn.1975). It follows, we think, that in determining if Sharpless proved the fact of pneumoconiosis so as to give rise to the presumption on which he relies, the Secretary was free to weigh the conflicting evidence and to determine which he found more persuasive. His determination in this case that the "B" readers were more persuasive is binding on us, and his finding that the fact of pneumoconiosis before July 1, 1973 was not proved has substantial support and is unassailable.

### IV.

From the view that we take as to the Secretary's right to find the facts with regard to the existence of pneumoconiosis, we need add little more for a final disposition of this appeal. Of course, both 30 U.S.C. § 921(c)(4) and 20 C.F.R. § 410.414(b)(4) and (c) permit pneumoconiosis to be presumed under certain conditions upon proof of a "totally disabling respiratory or pulmonary impairment" or a "totally disabling chronic respiratory or pulmonary impairment" even if x-ray studies are negative for pneumoconiosis. But our review of the record persuades us that the Secretary's determination that such a respiratory or pulmonary impairment was not proved is supported by substantial evidence.

AFFIRMED.