**Evermont STATEN, Appellant,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Appellee.**

No. 77–2200.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 4, 1978.

Decided May 3, 1979.

James H. Coleman, Malden, W. Va., for appellant.

James S. Arnold, Asst. U. S. Atty., Charleston, W. Va. (Robert B. King, U. S. Atty., Charleston, W. Va., and A. George Lowe, Sp. Asst. U. S. Atty., Baltimore, Md., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and WIDENER and PHILLIPS, Circuit Judges.

WIDENER, Circuit Judge:

This action was brought by the claimant, Evermont Staten, against the Secretary of Health, Education and Welfare pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), incorporated by reference in § 413(b) of the Federal Coal Mine Health and Safety Act (Act), 30 U.S.C. § 923(b), to obtain judicial review of a final decision of the Secretary denying him black lung benefits under the Act.

Staten filed a claim for black lung disability benefits on June 26, 1972. His claim was initially denied by the Bureau of Disability Insurance. After reconsidering his claim, the Bureau again denied him black lung benefits.

On November 7, 1975, Staten received *de novo* consideration of his entitlement to black lung benefits by an administrative law judge (ALJ). The ALJ denied Staten's claim, concluding that the evidence did not demonstrate the existence of either actual or presumed pneumoconiosis, or a totally disabling respiratory or pulmonary impairment presumed to be pneumoconiosis. The Appeals Council, on January 23, 1976, approved the ALJ's opinion, thus making it the final decision of the Secretary.

Staten then brought suit in the district court seeking review of the Secretary's final decision. The district court entered judgment in favor of the Secretary, concluding that the Secretary's decision that Staten failed to establish that he was disabled as of June 30, 1973 primarily as a

result of black lung was supported by substantial evidence. This appeal followed.

Staten is presently 65 years old, and testified that he worked in underground coal mines for approximately 32 years.[1] The following evidence was adduced at the hearing conducted by the ALJ.

Staten was found eligible for Social Security disability insurance benefits on August 23, 1971. It was determined that he was disabled since December 13, 1970 due to a stroke and its residual effects. The report of William F. Hillier, Jr., M.D., a neurosurgeon, dated August 16, 1971, in support of Staten's claim for Social Security disability insurance benefits, was made part of the record. The report stated that Staten had suffered a succession of transient cerebral ischemic attacks that resulted in numerous impairments to the right side of his body, and concluded that Staten was not capable of engaging in gainful employment.

A chest X-ray made on February 6, 1973 was made part of the record. The X-ray was read by Ilona D. Scott, M.D., a radiologist certified as an A reader of coal miners' chest X-rays.[2] Dr. Scott reported that the "[c]hest examination shows few small rounded opacities in the mid lung zones, which measure approximately 1.5 mm in their greatest diameter," and concluded that the X-ray was consistent with pneumoconiosis, category 1/0 p.

The Secretary had the X-ray read by Dr. Scott re-read by Drs. Joseph C. Furnary, Harold J. Schneider, and G. J. Rosenstein, all radiologists certified as B readers of miners' chest X-rays. Doctors Furnary, Schneider and Rosenstein reported the X-ray to be completely negative for pneumoconiosis.

On March 16, 1973, Dr. Donald L. Rasmussen, a specialist in pulmonary diseases and internal medicine, administered pulmonary function tests to Staten. Dr. Rasmussen recorded Staten's forced expiratory volume for one second ($FEV_1$) at 3.35 liters. He recorded Staten's maximum voluntary ventilation (MVV) at 117 liters per minute. Dr. Rasmussen noted that the results of the pulmonary function studies showed that Staten had a minimally restrictive ventilatory insufficiency and that his maximum breathing capacity was minimally reduced.

A chest X-ray conducted on August 26, 1975 was made part of the record. The X-ray was read by Lawrence W. Abbott, a doctor of osteopathy, and apparently not a certified reader of chest X-rays. Dr. Abbott reported that the X-ray showed "three fibrosed areas the size of a quarter in hilar portion of lungs that could be due to athrocosis [sic]." [3]

Additionally, Staten testified that he was often short of breath, coughed a lot, could not walk very far and had to walk with a cane. He also testified that during the time he worked in the mines he noticed that breathing problems began to appear, and that when he left the mines in 1957 his breathing problem was interfering with his work. However, Staten also testified that the reason he stopped working in the mines in 1957 was because he was laid off due to lack of work. Subsequent to 1957, Staten

---

1. The Secretary determined that Staten had more than 10 years of employment in the coal mines. The difference between Staten's testimony and the Secretary's finding could be significant in that it could affect the availability of certain 15-year presumptions contained in the Act and the Secretary's regulations. E. g., 30 U.S.C. § 921(c)(4) and 20 C.F.R. § 410.414(b), and 20 C.F.R. § 410.490(b)(1)(ii). However, since the Secretary in his brief has not made an issue of Staten's length of employment in the mines as that may affect Staten's entitlement to the various 15-year presumptions, for the purpose of this opinion we assume that Staten had more than 15 years of employment in the mines.

2. The National Institute of Occupational Safety and Health of the Public Health Service groups readers of coal miners' chest X-rays into two categories, A and B, according to their experience and expertise. Those in category B are considered to have attained a higher degree of proficiency in reading miners' chest X-rays than those in category A. See *Sharpless v. Califano*, 585 F.2d 664, 666, 666 n. 5 (4th Cir. 1978).

3. Pneumoconiosis is defined as including anthracosis. See 20 C.F.R. § 410.110(o)(1).

worked for the State Road Commission and for a hotel. It was stipulated that had Staten's wife testified at the hearing, she would have corroborated her husband's testimony.

In reaching his decision that Staten was not entitled to black lung benefits, the ALJ stated that he carefully considered all the evidence of record, including the testimony of Staten and the various medical evidence set forth above. The ALJ found that the 1973 X–ray did not sufficiently establish the presence of black lung, despite the positive reading of that X–ray by Dr. Scott, since the X–ray was found to be completely negative when independently interpreted by three B readers. With regard to Staten's contention that he was entitled to the presumption contained in 20 C.F.R. § 410.-490(b)[4] based, in part, on Dr. Scott's positive reading of the 1973 X–ray, this issue was decided adversely to Staten's position in *Sharpless v. Califano*, 585 F.2d 664 (4th Cir. 1978). In *Sharpless*, we held that the Secretary, in determining a claimant's entitlement to the presumption contained in 20 C.F.R. § 410.490(b) based on X–rays, was free to weigh the conflicting X–ray evidence and determine which he found more persuasive. *Id.* at 666–667.

The ALJ noted that the results of the pulmonary function studies failed to establish the presence of a totally disabling respiratory or pulmonary impairment (presumed to be pneumoconiosis). It is conceded that

Staten's $FEV_1$ and MVV values exceeded the values set forth in both the interim and permanent regulatory criteria, 20 C.F.R. § 410.426(b) and 20 C.F.R. § 410.-490(b)(1)(ii).[5]

The ALJ stated that Dr. Hillier's 1971 report referred to Staten's cerebral ischemic attacks and was otherwise "unremarkable." Pursuant to 20 C.F.R. § 410.426(a), a miner shall be determined to be under a disability only if his pneumoconiosis is or was the primary reason for his inability to engage in comparable or gainful work. Medical impairments other than pneumoconiosis are not considered. Consequently, Staten's disability due to a stroke did not aid him in his attempt to demonstrate total disability due to black lung.

And, contrary to Staten's assertion that the ALJ partially ignored the 1975 X–ray,[6] the ALJ specifically considered that X–ray and gave his reasons for concluding it did not sufficiently demonstrate the presence of black lung. The ALJ stated the X–ray interpretation of Dr. Abbott was patently equivocal in that it said the fibrosed areas in the hilar portion of the lungs "could" be due to anthracosis. The ALJ also noted that Dr. Abbott made no finding of nodulation, "the hallmark of pneumoconiosis," that he was a doctor of osteopathy, not a radiologist, and that there was no occupational exposure between the 1973 and 1975 X–rays.[7]

4. So far as is pertinent to Staten's contention, 20 C.F.R. § 410.490(b) creates a rebuttable presumption that a miner who files a claim for benefits before July 1, 1973 is totally disabled due to pneumoconiosis if a chest X–ray establishes the existence of pneumoconiosis.

5. In our recent decision in *Hubbard v. Califano* and *Taylor v. Califano*, 596 F.2d 623 (4th Cir. 1979), we set aside as invalid Social Security Ruling 73–37 which provided that where X–ray or ventilatory function test results failed to establish total disability under the interim regulatory criteria, there was an inference that the claimant was not totally disabled. In the instant case, the ALJ neither cited nor relied on that ruling. Rather, he correctly concluded that the pulmonary function studies did not establish the presence of a respiratory or pulmonary disease (presumed to be pneumoconiosis). This is essentially what we approved in

*Hubbard v. Califano*, 582 F.2d 319, 322 n. 6 (4th Cir. 1978), and in the *Hubbard and Taylor* cases cited above in this footnote.

6. We have held that the Secretary must consider all relevant evidence, including evidence accumulated after June 30, 1973, in determining a claimant's entitlement to black lung benefits. See *Arnold v. Secretary*, 567 F.2d 258, 259 (4th Cir. 1977). See also *Talley v. Mathews*, 550 F.2d 911, 917 n. 14a (4th Cir. 1977).

7. Staten's attorney apparently realized that the fact that Dr. Abbott apparently was not a certified reader of miners' chest X–rays could affect the X–ray's probative value. Thus, at the close of the hearing he requested the opportunity to have the 1975 X–ray re-read by a certified reader or radiologist. This request was granted. This much is in the record. The record,

Our scope of review is confined to determining whether the Secretary's decision was supported by substantial evidence. *Petry v. Califano,* 577 F.2d 860, 861 (4th Cir. 1978). We are not to try the case *de novo. Oppenheim v. Finch,* 495 F.2d 396, 397 (4th Cir. 1974). Substantial evidence has been defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Laws v. Celebreeze,* 368 F.2d 640, 642 (4th Cir. 1968). See also *Teague v. Califano,* 560 F.2d 615, 618 (4th Cir. 1977). In the case before us, we cannot say the Secretary's denial of black lung benefits to Staten on the basis that he did not demonstrate the presence of totally disabling pneumoconiosis, actual or presumed, or a totally disabling chronic respiratory or pulmonary impairment presumed to be pneumoconiosis was not supported by substantial evidence.

however, does not contain a re-reading of the 1975 X-ray, and we are told at oral argument that the plaintiff, of modest circumstances, declined to have a radiologist re-read the X-ray. We are further told that an assistant to the ALJ, following the hearing, told the attorney for the plaintiff that if the 1975 X-ray were used, it would be re-read. We have not considered the 1975 X-ray in our decision other than as to the interpretation given to it by Dr. Abbott, and the weight given to it by the ALJ. Both of these matters are in the record. We have not weighed against the plaintiff the fact that he did not file a re-reading of the 1975 X-ray when given an opportunity so to do.

Additionally, although Staten did not specifically contend that he was entitled to the presumption of disability due to pneumoconiosis contained in 30 U.S.C. § 921(c)(4) and 20 C.F.R. § 410.414(b), on oral argument he argued that he had established total disability due to a chronic respiratory impairment and thus was entitled to that presumption of pneumoconiosis.

Under our holdings in *Hubbard v. Califano,* 582 F.2d 319 (4th Cir. 1978), and *Petry v. Califano,* 577 F.2d 860 (4th Cir. 1978), inconclusive or contradictory X-ray results inure to the benefit of neither party when a claimant attempts to establish total disability under 30 U.S.C. § 921(c)(4) and 20 C.F.R. § 410.414(b). Be-

Accordingly, the judgment of the district court is

AFFIRMED.

cause these holdings coexist with our more recent decision in *Sharpless v. Califano,* 585 F.2d 664 (4th Cir. 1978), the case should be considered under the rule of these cases also. Considering the case, then, under that rule, the X-ray evidence in this case would wash out in considering Staten's entitlement to the presumption contained in 30 U.S.C. § 921(c)(4) and 20 C.F.R. § 410.414(b). The X-ray evidence may no more inure to the benefit of Staten than it may to the benefit of the Secretary. Additionally, Staten concedes, and the record shows, that his FEV1 and MVV values exceed the values set forth in 20 C.F.R. § 410.-426(b). Thus, Staten fails to establish his claim under 20 C.F.R. § 410.414(b) either by X-rays or pulmonary function studies. This leaves the question of whether or not Staten's testimony, as corroborated by his wife, together with the report of the ventilatory tests which showed "minimal restrictive ventilatory insufficiency" and "maximum breathing capacity is minimally reduced," should require the finding of black lung disability. We are of opinion it does not, and are further of opinion the Secretary's finding that Staten did not suffer total disability either on account of black lung or a chronic respiratory or pulmonary impairment is supported by substantial evidence.