Arnold DAVIS, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 75–0822–CH.

United States District Court,
S. D. West Virginia,
Charleston Division.

May 8, 1979.

Ray E. Ratliff, Jr., Charleston, W. Va., for plaintiff.

Robert B. King, U. S. Atty., Charleston, W. Va., for defendant.

## MEMORANDUM ORDER

DENNIS R. KNAPP, Chief Judge.

This is an action seeking review of the final decision of the Secretary of Health, Education and Welfare denying the plaintiff's claim for black lung benefits pursuant to sections 411(a) and 412(a)(1) of the Federal Coal Mine Health & Safety Act of 1969, as amended. 30 U.S.C. §§ 921(a) and 922(a)(1). Review in this court is based upon the provisions of 30 U.S.C. § 923(b), which expressly incorporates § 205(g), (h) of the Social Security Act. 42 U.S.C. § 405(g), (h) (1976).

■ The sole issue is whether the final decision of the Secretary denying the plaintiff's claim is supported by substantial evidence. In *Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972), substantial evidence was defined to be "evidence which a reasoning mind would accept as sufficient to sup-

port a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" Additionally, the Secretary, not the court, is charged with resolving conflicts in the evidence.

Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). In order for the court to perform its responsibility, "the Secretary, in determining an applicant's entitlement to black lung benefits, must consider all relevant evidence, including that accumulated after June 30, 1973, and must indicate explicitly that such evidence has been weighed and its weight." *Arnold v. Secretary of Health, Education and Welfare*, 567 F.2d 258, 259 (4th Cir. 1977).

The plaintiff is presently 60 years of age and has a fourth grade education, unsupplemented by vocational training. He worked in the coal mines for approximately 25 years. He quit work entirely in 1966 due to psychiatric problems. He has been receiving Social Security disability benefits since 1966 due to that problem (Tr. 86).

The medical evidence submitted in this case is quite extensive. He has undergone multiple X-ray examinations, pulmonary function studies, a medical examination and a blood gas study.

The X-rays date from March 9, 1971. The X-ray of that date was initially read as being negative for pneumoconiosis by J. Dennis Kugel, M.D., a certified reader of coal miner's X-rays. At the instance of the Secretary, this film was re-read three times by contract "B" readers. The first re-reading was performed by M. W. Jacobson, M.D., on October 12, 1971. Dr. Jacobson found the film too hazy to read. Inexplicably the Secretary submitted the film to another re-reader. The second physician to re-read the film, J. M. Dennis, M.D., on March 20, 1974, also found the film to be of poor quality but opined that while there was pleural thickening the left lobe, there was no evidence of pneumoconiosis.

Another X-ray was taken on August 23, 1971 by Joel Allen, M.D., a certified reader. Dr. Allen noted an increase in the A.P. diameter with nodular fibrosis present in both lungs. He classified his findings as pneumoconiosis, category 2/1-Q-od. This film was re-read by two contract re-readers as negative. A third film is dated December 7, 1971 and was initially read as negative by A. W. Goodwin, M.D., a certified reader. He did note fibrosis at the base of the left lung. This film was also re-read twice by contract "B" readers as negative. An X-ray report dated September 17, 1974, was interpreted by A. A. Pelaez, a certified reader, initially as showing pneumoconiosis category p 3/2 and emphysema. This film was re-read once as negative. An X-ray report from Charles W. Nelson, M.D., a certified reader, dated June 12, 1975, found little evidence of emphysema but found pneumoconiosis category 2-p, lq. This film was not re-read.

■ It has been established that the Secretary may place greater reliance on the opinions of "B" readers, *Sharpless v. Califano*, 585 F.2d 664 (4th Cir. 1978); however, it is equally clear that where, as here, there is a conflict in findings, the results inure to the benefit of neither the claimant nor the Secretary. *Petry v. Califano*, 577 F.2d 860, 864 (4th Cir. 1978). The *Petry* rationale is necessary due to the proven unreliability of X-ray studies to diagnose pneumoconiosis. (1972) U. S. Code Cong. & Admin. News, pp. 2314, 2316.

The plaintiff underwent pulmonary function tests on four occasions. The first study was performed by D. Gaziano, M.D., on February 15, 1973. The values found were an FEV1 of 2.214(L) and an MVV of 100(L/min). The second study done on September 5, 1973, by E. R. Chillag, M.D., revealed an MVV of 46(L/M) and an FEV1 of 1.340(L). The third test was performed on September 17, 1974 by A. A. Pelaez, M.D., and revealed an MVV of 35(L/M) and

an FEV of 0.800. The last test was performed on June 12, 1975, by Donald Rasmussen, M.D. He found an MVV of 84 and FEV1 of 2.44. The plaintiff's effort was listed as good to fair on all the reports.

The Secretary's finding as to the plaintiff's height is not supported by substantial evidence. Apparently relying on Dr. Gaziano's recordation of the plaintiff's height, the findings of three other qualified physicians are ignored. On three different occasions Drs. Chillag, Pelaez and Rasmussen measured the plaintiff's height to be 69 inches. These measurements were taken in preparation for pulmonary function studies. Using a height of 69 inches, the test of February 15, 1973 shows an FEV1 below the listed value and one MVV slightly in excess of the listed value. Both values on the tests of September 5, 1973 and September 17, 1974, are below those listed in 20 C.F.R. § 410.490. Dr. Rasmussen's test of June 12, 1975 showed an MVV significantly below the listed value and an FEV1 of 2.44.

■ Defendant argues that plaintiff's FEV1 on the last test is higher (2.44/2.4) than the listed value and consequently rebuts the results of the second and third tests. After a careful consideration of the enabling statute and the regulations promulgated under the statute the court finds that this is not the case. The legislative history of the Black Lung Benefits Act of 1972 (under which the pertinent regulation was developed: 20 C.F.R. § 410.490[b][1][ii]) shows that Congress clearly intended the 1972 Act to be liberally construed in favor of miners with worthy claims. *Bozwich v. Mathews*, 558 F.2d 475, 479 (6th Cir. 1977) citing [1972] U. S. Code Cong. & Admin. News, p. 2315. The table found in 20 C.F.R. § 410.490(b) reads in pertinent part as follows:

| Height | Equal to or less than— FEV1 and MVV | |
|---|---|---|
| 69″ | 2.4 | 96 |
| 70″ | 2.5 | 100 |
| 71″ | 2.6 | 104 |
| 72″ | 2.6 | 104 |
| 73″ or more | 2.7 | 108 |

■ The valuation of the FEV1 and MVV in the regulations use only a unit number (the digit to the left of the decimal point) and a tenths number (the digit to the right of the decimal point). The entire figure is accurate to the unit place, the figure occupying the tenths' position is an approximation of the precise value. It is mathematically imprecise and contra to the Secretary's own regulations to apply a measured result which is carried out beyond the tenths position to a hundredths or even thousandths. Rather the digits beyond the tenths position must be either rounded down or up to conform to the degree of accuracy ordained by the Secretary in his regulations. In this case the FEV1 value is 2.44. Therefore, the hundredth place being less than 5, the tenth place must be rounded down making the figure read 2.4. Thus, a precise valuation of Dr. Rasmussen's result for the FEV1 meets the requirements for establishing the presumption of total disability under 20 C.F.R. § 410.490. Dr. Rasmussen's findings, then, serve not, as suggested by the defendant, to refute the findings of the second and third tests but to buttress them.

■ A review of all the pulmonary function tests reveals that the only value in excess of those listed in the table was the MVV score in the test performed on February 15, 1973, by Dr. Gaziano. 20 C.F.R. § 410.430 sets forth the requirements for measuring ventilatory function for utilization in claims adjudication. The language contained in this section shifts several times from employing the directory word "should" to the mandatory word "must" and back again. The regulation only recommends by use of the word "should" that the MVV value is to be measured and not calculated. *Holdren v. Califano*, CA 75–1387 (S.D.W.Va. July 21, 1977). The calculation referred to is the standard charted in the regulations that the MVV is equal to 35 to 40 times the FEV1 value. In *Holdren*, supra, the Court noted that the mandatory statement concerning understanding and cooperation is geared towards obtaining the MVV value, which is the more effort-de-

pendent, rather than towards the FEV1. The MVV test "demands vigorous cooperation from the patient and is exhausting," whereas, the FEV1 test has been described as being simple, easier for the patient, and more discriminating than the maximal breathing capacity tests such as the MVV. See, Cecil-Loeb, *Textbook of Medicine*, 496 (12th ed. 1967). Thus, of the two values, the FEV1, being more objective, is the more useful for determining pulmonary impairments. *Holdren*, supra.

Using the FEV1 value of the pulmonary function study conducted by Dr. Gaziano on February 12, 1973 (2.214 liters), and employing the multiplier of 40, one obtains an MVV value of 88.56. Thus, by calculation, both the FEV1 and MVV values for the pulmonary function study of February 15, 1973 are observed as being lower than the requirements of 20 C.F.R. § 410.490(b)(1)(ii) for a person 69 inches tall.

■ In addition to examining an X-ray report and the pulmonary function study, Dr. Rasmussen also performed blood gas and ergometric testing on June 12, 1975. The values derived from that testing do not meet those listed in 20 C.F.R. § 410.490 (appendix). However, from his testing, Dr. Rasmussen, an "acknowledged" expert in the field (see [1972] U. S. Code Cong. & Admin. News, p. 2314), concluded that the plaintiff:

> ". . . exhibited minimal ventilatory insufficiency, moderate impairment in oxygen transfer, and an abnormal ventilatory response with exercise. This patient [plaintiff] would appear to be incapable of performing steady work beyond strictly light to sendentary work levels. A numerical estimate of the overall loss of functional capacity in this case would be placed in the neighborhood of 65%."

This diagnosis is the equivalent of finding the claimant totally disabled. *Petry v. Califano*, supra, p. 866, n. 10.

■ After reviewing the record as a whole, the Court has determined that the Secretary's denial of benefits is without substantial evidentiary support. The record

reveals that the plaintiff has met the requirements set forth in 20 C.F.R. § 410.490, thereby establishing a rebuttable presumption of total disability due to pneumoconiosis. Further the record is bereft of any evidence that can conceivably be construed to rebut that presumption.

Consequently, it is therefore ORDERED that the decision of the Secretary be reversed; that the defendant's motion for summary judgment be denied; that plaintiff's alternative motion for remand be denied; that plaintiff's motion for summary judgment be granted; and that plaintiff be granted benefits in accordance with his application and the provisions of the Act, as amended.