Bordman CRESS, Plaintiff,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES, Defendant.

Civ. A. No. 77–0075–C(H).

United States District Court,
N. D. West Virginia,
Clarksburg Division.

June 5, 1980.

Virginia Jackson Hopkins, North Central West Virginia, Legal Aid Society, Morgantown, W. Va., Janet Todd, Patricia Jackson, Kingwood, W. Va., for plaintiff.

Stephen G. Jory, U. S. Atty., Elkins, W. Va., for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, District Judge.

In this action Plaintiff seeks review of the final decision of the Secretary of Health and Human Services (hereinbefore Secretary of Health, Education and Welfare; hereinafter Secretary), denying his claim for black lung benefits filed under the provisions of Sections 411(a) and 412(a)(1) of the Federal Coal Mine Health and Safety Act of 1969, as amended. 30 U.S.C. §§ 921(a) and 922(a)(1). Review in this Court is based upon the provisions of 30 U.S.C. § 923(b), which expressly incorporate Sections 205(g) and (h) of the Social Security Act. 42 U.S.C. §§ 405(g) and (h). The case presently is pending before the Court on the cross motions of the parties for summary judgment.

The Secretary contends that the sole issue before the Court is whether the Secretary's decision is supported by substantial evidence. If this is so, and if the Secretary's decision is supported by substantial evidence on the record as a whole, then this Court is bound to affirm that decision. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Blalock v. Richardson,* 483 F.2d 773 (4th Cir. 1972).

Plaintiff, on the other hand, asserts that the Secretary made numerous legal errors in the determination of his claim so that the decision cannot be said to be supported by substantial evidence. Plaintiff further contends that the evidence presently contained in the record demonstrates that he is entitled to black lung benefits.

After initial denials of his claim, Plaintiff exercised his right to review before an Administrative Law Judge (ALJ) but chose not to appear and testify. The ALJ rendered a short opinion finding Plaintiff had failed to establish entitlement. Upon review, the Appeals Council reversed the ALJ's decision and remanded the claim to another ALJ for another hearing. Plaintiff then appeared before the second ALJ, testified, and was represented by counsel. In a written decision, the second ALJ found that Plaintiff had failed to establish entitlement to black lung benefits, and Plaintiff's claim was denied. The second ALJ's decision was affirmed by the Appeals Council and thus became the final decision of the Secretary at issue here.

Bordman Cress, born January 5, 1888, was 88 years of age at the time of his hearing before the ALJ, and presently is 92 years of age. He began working in an underground coal mine owned by his father, called the Cress Mine, when he was approximately 12 years old, and continued to work in that mine substantially all of the time until 1912. He testified that he had approximately six years of education, and that he worked in the mine even when he was attending school. Although the record is somewhat unclear as to the specific dates, and total amount of time that Plaintiff may have worked in underground coal mining, it is clear to this Court, based upon the record, that Plaintiff worked for at least seventy months for the Preston Coal and Coke, be-

tween the years 1918 to 1943; one year for B&F Coal, between 1946 and 1948; and one year at the Sisler and Berry Mine, approximately 1949 to 1950. The ALJ, in his decision, found that Plaintiff had established more than ten years coal mining employment. This Court finds that Plaintiff has established upon the basis of the record before the Court, at least twenty years coal mine employment. It is possible that Plaintiff actually engaged in coal mine employment for a longer period of time, and in this regard the Court notes that certain of the records of the Preston Coal and Coke Mine were destroyed in a fire, and that most of the years that Plaintiff worked at that mine were prior to 1937, the date from which Social Security records have been kept. Nevertheless, the Court reiterates that at least twenty years coal mine employment are established by this record.

In 1944, Plaintiff suffered a heart attack, and for two years thereafter did not engage in strenuous physical activity. Nevertheless, in 1946 he returned to coal mining, at the B&F Coal Company, but after spending no more than another year in that mine, he had to quit because he was hauling rails and "didn't have enough breath for it." Administrative transcript, p. 68. Plaintiff testified that his ability to breathe has progressively deteriorated since that time. Administrative transcript, p. 69. Plaintiff finally left mining altogether because he "wasn't able to hold his job down" because "when [he] had any exertion why [he] couldn't get [his] breath, out of breath, run out of breath." *Id.* He further testified that he suffers from a "right smart coughing of a night and sometimes during the daytime . . . ." *Id.* from which he has suffered for fifteen years or more, although his memory apparently is not clear on this point. The cough from which he suffers is productive, and as Plaintiff stated, "I don't know what you call it, well you call it the phlegm or not, it's more or less of a pinkish looking stuff and part of the time, why, I coughed up, it's like yellow like pus." Administrative transcript, p. 70. Plaintiff further testified that "Old Doc Johnson, long before he was died" had told Plaintiff that the cough was something that he was going to have to learn to live with, but the Doc did not tell Plaintiff what it was.

Plaintiff testified that when he walks to his mailbox he has to stop two or three times before he can get up to the road, a distance of approximately 500 feet. Plaintiff has problems in sleeping, and sleeps with two or three pillows on his head of a night. Transcript, p. 71, and that he takes a big yellow, kind of an orange color pill for breathing, four times a day. Transcript pp. 71–72.

Three other witnesses also testified at the hearing, all corroborating Plaintiff's testimony concerning dates and places of coal mining employment.

The medical evidence of record includes the interpretations of two x-rays and one pulmonary function study. An x-ray dated August 11, 1971, was initially interpreted by Dr. Harron, a NIOSH certified reader of coal miners' x-rays, as demonstrating moderately advanced generalized emphysema, arteriosclerotic cardiovascular disease with left ventricular prominence, and simple pneumoconiosis ILO category II P UICC classification small rounded opacities size P involving six lung fields profusion 2/1. This x-ray subsequently was reread by two NIOSH certified readers, Doctors Gayler and Weinstein, both of whom concluded that the x-ray was completely negative for pneumoconiosis. An x-ray dated July, 1973, was interpreted by Doctors Jae Koh and O. F. Gabriele as demonstrating slight interstitial fibrosis of both lungs, and mild interstitial fibrosis, left ventricular hypertrophy. Professional qualifications of Drs. Koh and Gabriele were not included in the Administrative record.

A pulmonary function study was conducted on September 13, 1971. The examining physician included the tracings with the report and noted that the Plaintiff's cooperation was good. The results were: Plaintiff's height equalled 70 inches; FEV 1 equalled 2.6L.; MVV equalled 86.4 L/Min.

Notes from a Dr. Whittlesey are contained in the record. The doctor noted that

he had examined Plaintiff in 1944 for a "typical coronary examination" and had not seen Plaintiff again until February 1, 1972, at which time Plaintiff was complaining of shortness of breath. In his report, Dr. Whittlesey refers to an x-ray purportedly taken in 1971 at the Fairmont Clinic, and notes "not much". Dr. Whittlesey concluded with the diagnoses of: coronary disease; chronic bronchitis/emphysema; probable black lung.

Plaintiff contends the Secretary committed the following errors: (1) Secretary failed properly to consider Plaintiff's work history and consequently failed to accord Plaintiff consideration under the statutory presumption of Section 411(c)(4) of the Act; 20 C.F.R. ¶ 410.414(b); (2) Secretary erroneously relied upon Social Security 73–37 in making her decision; (3) Secretary erroneously relied upon negative x-ray rereadings; (4) Secretary erred in failing properly to consider other evidence, including lay testimony, of record; and (5) Plaintiff was denied due process by the Secretary's refusal to issue subpoenas as requested for the x-ray film and to subpoena the negative rereaders.

Because the Court finds that the Secretary committed the legal errors described below, the Court finds that the Secretary's decision is not supported by substantial evidence.

■ First, the Court finds that the Secretary did, and a reading of the ALJ's decision unequivocally demonstrates, that the Secretary did rely upon Social Security Regulation 73–37. This constitutes reversible error in and of itself. *Hubbard v. Califano,* 596 F.2d 623 (4th Cir. 1979).

■ The record also demonstrates that Plaintiff's counsel requested the ALJ to issue subpoenas for the September, 1971, x-ray and also to subpoena the negative x-ray rereaders so that they might be cross examined. The Court finds that Plaintiff articulated a sufficient basis of need for this, and the subpoenas should have been issued. The Secretary never contended, on the face of this record, that the requests for

the subpoenas were not timely made. It also is clear that the Secretary expressly relied upon the negative rereadings of the September, 1971, x-ray to support her denial of benefits in this case. This is reversible error. *Souch v. Califano,* 599 F.2d 577 (4th Cir. 1979); *Sisler v. Califano,* 484 F.Supp. 326 (N.D.W.Va.1979).

■ The Court finds that it is not necessary to rule on the other alleged legal errors committed by the Secretary. Parenthetically, the Court notes that the Secretary is entitled to submit positively interpreted x-rays to contract rereaders, and further may rely upon those negative rereadings as substantial evidence in support of a denial. *Sharpless v. Califano,* 585 F.2d 664 (4th Cir. 1978). Additionally, it has been held that the Secretary's failure specifically to evaluate Plaintiff's claim under the fifteen year presumption of 20 C.F.R. ¶ 410.414(b) is not reversible error where the Secretary properly finds that Plaintiff has failed to establish a totally disabling chronic respiratory or pulmonary impairment. *Robertson v. Califano,* 601 F.2d 1276 (4th Cir. 1979). Finally, this Court's review of the transcript of the hearing held before the second ALJ, and reading of the ALJ's decision, leads this Court to conclude that the Secretary afforded Plaintiff a fair hearing, and properly considered the lay evidence of record. The Secretary's error in this action lies in her reliance upon Social Security Ruling 73–37, and violation of the rule enunciated in *Souch v. Califano, supra.*

■ Plaintiff argues that he has established entitlement to benefits pursuant to Section 411(c)(4) of the Act, 30 U.S.C. § 921(c)(4), and 20 C.F.R. ¶ 410.414(b). As stated above, the Court finds in this case that Plaintiff has established more than fifteen years employment in the coal mines. Pursuant to Section 411(c)(4), and ¶ 410.-414(b), the issue before the Court thus becomes whether Plaintiff has established that he suffered from a totally disabling chronic respiratory or pulmonary impairment as demonstrated by "other evidence" (i. e., other than x-rays, biopsy or autopsy). The Court must draw its direction for this

determination from the case of *Petry v. Califano*, 577 F.2d 860 (4th Cir. 1978).

The "other evidence" of record in this case consists solely of the pulmonary function study, Dr. Whittlesey's report, and the lay evidence of record. Of greatest significance, in the Court's view is the pulmonary function study results. Under the Interim Adjudicatory Rules Plaintiff, having established fifteen or more years of underground or comparable coal mine employment, could establish a presumption, by proof of a chronic respiratory or pulmonary impairment by pulmonary function study results as follows: FEV 1 equal to or less than 2.5; MVV equal to or less than 100. In this case, the MVV was far below the regulatory table value, while the FEV 1 was .1 L. above the tabular value. Thus Plaintiff certainly could not establish entitlement under ¶ 410.490(b). Nevertheless, it is clear that ventilatory studies that result in values in excess of the regulatory table values do not necessarily defeat the creation of the presumption contained in ¶ 410.414(b). *Petry v. Califano, supra*, at note 12; *Bozwich v. Mathews*, 558 F.2d 475 (8th Cir. 1977); *Sisler v. Califano, supra*, 334. Thus the Court finds persuasive evidence that the Plaintiff suffered from a disabling chronic respiratory impairment by virtue of the pulmonary function study of record.

Likewise, it is plain that Plaintiff suffered from severe shortness of breath and a severe productive cough at all relevant times herein. This simply was established by Plaintiff's own testimony, which to this date remains unrebutted.

■ The above constitutes the "other evidence" of record. Nevertheless, the Court finds buttressing evidence in the interpretation by Dr. Harron of the September, 1971, x-ray. As the Court recognized in *Petry v. Califano, supra*, where the interpretation of the x-ray evidence is in conflict, such evidence inures to the benefit of neither party in consideration of the presumption of ¶ 410.414(b). In this case, the violation of the rule enunciated in *Souch v. Califano, supra*, has undermined the validity of the rereaders' negative interpretations for purposes of this proceeding, and, although evidence other than x-rays is necessary to establish disability per ¶ 410.414(b), the Court finds that the interpretation of the x-ray by Dr. Harron buttresses the validity of the pulmonary function study and lay evidence of record. See *Sisler v. Califano, supra*.

Finally, Dr. Whittlesey's report contained a diagnosis of "probable pneumoconiosis". The Court does not rely in any way upon the notations contained in this report as it is unclear whether they are supported by "clinical findings" or not.

■ In accordance with the foregoing, the Court finds: (1) that Plaintiff has proven that he was employed in coal mines for more than fifteen years; (2) that he has proven that he suffered from a totally disabling chronic respiratory impairment; and (3) that the respiratory impairment is presumed to have arisen from coal mine employment.* The Court further finds that the evidence of record suggests that the Secretary would not be able to rebut the Plaintiff's positive evidence should the Court remand for further consideration of the entitlement issue. Moreover, the Secretary has not demonstrated any just reason why the termination of this case should be prolonged. Plaintiff was approximately 82 years of age at the time he applied for benefits. He presently is 92 years of age. The Court thus declines to remand the action for further proceedings. Accordingly, the Court hereby ORDERS that the Defendant's motion for summary judgment is

---

* An alternative path to entitlement in this case is found in 20 C.F.R. ¶ 410.426(d), applicable when ventilatory or physical performance tests do not "establish" total disability. That Section provides:

". . . pneumoconiosis may nevertheless be found totally disabling if other relevant evidence (see § 410.414(c)) establishes that the miner has (or had) a chronic respiratory or pulmonary impairment, the severity of which prevents (or prevented) him not only from doing his previous coal mine work, but also, considering his age, his education and work experience, prevents (or prevented) him from engaging in comparable and gainful work."

DENIED, the Plaintiff's motion for summary judgment is GRANTED, and the Secretary is directed to GRANT Plaintiff benefits.

All matters in this case being concluded, the Court hereby ORDERS that this case is dismissed from the docket of this Court. The Clerk is directed to send certified copies of this Order to all counsel of record.