851 F.2d 356
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Floyd L. HUSTEAD, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent.
Floyd L. HUSTEAD, Plaintiff-Appellant,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR; Defendant-Appellee,
and
Arthur/Righter Coal Corporation; Long Fuel Co.;
Byron/Hygrade Coal; Consolidation Coal Company;
Dawson Coal Co.; Barnes Coal Co., Defendants.
 Nos. 87-3846, 87-3871.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 8, 1988.
Decided: July 11, 1988.
 
 1
 Michael A. Malyuk for appellant.
 
 
 2
 Brian E. Peters (George R. Salem, Solicitor of Labor; Donald S. Shire, Associate Solicitor; and Barbara J. Johnson, Counsel for Appellate Litigation, United States Department of Labor, on brief), for appellee.
 
 
 3
 Before WIDENER and MURNAGHAN, Circuit Judges, and JAMES B. McMILLAN, District Judge for the Western District of North Carolina, sitting by designation.
 
 
 4
 JAMES B. MCMILLAN, District Judge, Sitting by desingation.
 
 
 5
 Plaintiff filed an application for Black Lung benefits on September 29, 1980, under the provisions of Title IV of the Federal Coal Mine and Safety Act of 1969, as amended, 30 U.S.C. Sec. 901 et seq. After an initial denial of his claim the case was referred to the Department of Labor Office of Administrative Law Judges. On May 16, 1984, a hearing was held before an Administrative Law Judge (ALJ). The ALJ found that plaintiff suffers from penumoconiosis (20 C.F.R. Sec. 718.202) and that the pneumoconiosis presumptively arose out of his eleven years of coal mine employment (20 C.F.R. Sec. 718.203), but did not find that plaintiff was totally disabled as a result of the pneumoconiosis (20 C.F.R. Sec. 718.204). The Department of Labor's Benefit Review Board affirmed the ALJ's decision that plaintiff did not meet his burden of proving total disability and plaintiff appeals that decision.
 
 
 6
 This court has jurisdiction to consider plaintiff's appeal pursuant to section 21(c) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. Sec. 921(c), as incorporated by section 422(a) of the Black Lung Benefits Act. Because we find that (1) the ALJ did not give adequate consideration to what medical evidence there was in the record, and (2) that the Director did not satisfy his burden of developing the medical evidence necessary for a determination of claimant's entitlement to benefits, we remand for further development and consideration of the medical evidence.
 
 I.
 
 7
 To qualify for benefits under the Black Lung Benefits Act the miner must prove three things--that he suffers from pneumoconiosis, that the pneumoconiosis arose out of his coal mine employment, and that he is totally disabled by the pneumoconiosis. Sharpless v. Califano, 585 F.2d 664 (4th Cir.1978); 20 C.F.R. Secs. 718.202, 718.203 and 718.204. A finding of pneumoconiosis may be made on the basis of x-ray evidence. In this case the Director stipulated that plaintiff has pneumoconiosis based on exhibit # 9, which is the February 3, 1981, report of Dr. Jon Pittman. That report by Dr. Pittman gives a positive reading for pneumoconiosis. Dr. Pittman is a "B-reader," a doctor who has successfully completed an examination given by the Department of Health and Human Services to test the reader's proficiency in assessing x-ray evidence, and greater weight is given to a diagnosis made by a "B-reader." See, Sharpless v. Califano at 666, f.n. 5; Carpenter v. Eastern Association Coal Corp., --- BLR ----, BRP No. 82-705 BLA (January 20, 1984).
 
 
 8
 The ALJ acknowledged the existence of Dr. Pittman's report when he adopted the Director's stipulation but for some unexplained reason paid it no further attention. Instead, the ALJ concluded that plaintiff failed to establish that he was totally disabled due to pneumoconiosis based on the results of a set of pulmonary function studies conducted on January 23, 1981, resting arterial blood gas studies also conducted on January 23, 1981, and the medical opinions of Drs. Brezler and Sybert. Absolutely no consideration was given to plaintiff's chest x-ray, also taken on January 23, 1981, which evidenced the presence of pneumoconiosis.
 
 
 9
 The ALJ failed to consider all the medical evidence, and the consideration he gave to the medical opinion of Dr. Sybert, plaintiff's treating physician, was less than adequate.
 
 
 10
 The ALJ and the Benefits Review Board found that Dr. Sybert's letter was not indicative of a total disability under the standards of 20 C.F.R. Sec. 718.204(c)(4). Pursuant to that regulation a miner can establish that he is totally disabled by pneumoconiosis if a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that the miner's respiratory or pulmonary condition prevents or prevented him from performing his usual coal mine work and from engaging in gainful employment in the immediate area of his or her residence requiring the skills or abilities comparable to those of any employment in a mine or mines in which he or she previously engaged. 20 C.F.R. Sec. 718.204(c)(4).
 
 
 11
 Dr. Sybert's letter is admittedly less than thorough, but his opinion deserves greater attention than it received. His letter states:
 
 
 12
 "Floyd Hustead was a patient of Dr. Robert Chellew of Kent, Ohio. Dr. Robert Chellew has retired and I have assumed his medical care. He was admitted to Robinson Memorial Hospital, June 23, 1980, with the diagnosis of Urinary Tract Infection. Tests were done at this time, Chest x-ray--normal, Abdominal x-ray--normal, Hemogram was normal, Urinalysis showed 35-40 W.F.C./h.p.f., Blood Glucose was 132 mg%. Electrolytes were normal, E.K.G. showed a sinus tachcardia.
 
 
 13
 "Mr. Hustead had a Pulmonary Function test at Robinson Memorial Hospital, June 17, 1981, was normal, Chest x-ray, June 17, 1981, diagnosis was Arterioclerotic Cardiovascular changes were noted.
 
 
 14
 In my opinion, he is totally disabled, he has shortness of breath on exertion and I feel from his history, that his years of working around the mines has contributed to his disability."
 
 
 15
 The ALJ discredits the letter because it does not diagnose a specific respiratory or pulmonary impairment, but neither the regulations or the case law require a doctor's opinion to state a specific diagnosis of a respiratory or pulmonary impairment in order for it to qualify as a well-reasoned opinion under 20 C.F.R. Sec. 718.204(c)(4). The ALJ also discredits the letter for failing to explain, to his satisfaction, the basis for Dr. Sybert's conclusion that plaintiff is totally disabled. The ALJ regarded these "deficiencies" as fatal but nonetheless refused to grant plaintiff's request to leave the record open after the hearing for submission of additional evidence from Dr. Sybert. The ALJ also neglected to make any further inquiry on his own of Dr. Sybert to aid in the determination of claimant's eligibility for disability benefits. (The ALJ could have propounded specific interrogatories to Dr. Sybert to clarify any questions he had pertaining to Dr. Sybert's letter as is oftentimes done in Social Security cases.)
 
 
 16
 The ALJ erred by failing to give adequate consideration to the positive x-ray evidence of plaintiff's pneumoconiosis and by discrediting Dr. Sybert's opinion without first examining its validity or attempting to secure additional evidence on the subject. See, In the Matter of Frank Kertesa v. Crescent Hills Coal Co., and Old Republic Companies, and Director, Office of Workers' Compensation Programs, 788 F.2d 158, 163 (3rd Cir.1986) (Where the ALJ believes additional medical testimony is needed to explain the clinical evidence, the ALJ should have made an effort to obtain such information, rather than discredit medical opinions because of its absence.).
 
 II.
 
 17
 The Director is obliged to develop the medical evidence necessary for a determination with respect to each claimant's entitlement to benefits and each claimant is statutorily entitled to have the Department of Labor arrange, and pay for, a complete pulmonary evaluation. Federal Coal Mine Health and Safety Act of 1969 Sec. 413(b), as amended, 30 U.S.C. Sec. 923(b); 20 C.F.R. Secs. 718.101; 725.407.
 
 
 18
 The Director contends that the Department of Labor has fully discharged any duty it may have to plaintiff because he was provided with a complete pulmonary evaluation consisting of x-rays, a pulmonary function test, an arterial blood gas test and an examination by Dr. Mario Brezler. Unfortunately, the x-ray taken pursuant to the consultative examination was ignored by the consultative examiner. Dr. Brezler formed his opinion and prepared his report before the x-ray results came back from Dr. Pittman. Dr. Pittman gave plaintiff's x-ray a positive reading for pneumoconiosis, but his findings were not incorporated into Dr. Brezler's report.
 
 
 19
 Dr. Brezler's report, which is recorded on the Department of Labor's form for reporting on a pneumoconiosis examination, is also not sufficiently detailed with regard to claimant's past medical and employment history and medical assessment to be the basis for a well-reasoned doctor's opinion or to discharge the Director of his responsibility to develop the medical evidence necessary for a determination of claimant's entitlement to benefits. See, 20 C.F.R. Secs. 718.101, 725.407.
 
 
 20
 The Department of Labor's reporting form poses a series of questions which the examining physician is expected to answer.
 
 
 21
 Question 6(a) is a checklist for the examining doctor to fill out indicating the claimant's symptoms and the duration of the designated symptoms. Dr. Brezler reports that claimant suffers from Dyspnea (quantitate), defined as difficult or labored breathing, "On minimal exertion?" and gives no further explanation of what the question mark refers to.
 
 
 22
 Question 7(c) of the evaluation form asks for the doctor's diagnosis pertaining to the claimant's cardiopulmonary system. Dr. Brezler reports, "1. Atherosclerotic cardiovascular disease with angina pectoris. 2. Status post coronary artery bypass."
 
 
 23
 Question 7(d) asks: "In your opinion is the diagnosed condition related to dust exposure in the patient's coal mine employment? [Yes or no] (Please provide medical rationale.)" [Emphasis added.] Dr. Brezler checked the box indicating 'no," but, contrary to the instructions, provided no medical rationale for his opinion.
 
 
 24
 In answer to question 7(f), Dr. Brezler indicates that the patient is not physically able to undergo blood gas study tests with exercise. As an explanation for why these tests are medically contraindicated, he writes: "See history and physical." However, neither the history nor the physical portions of the evaluation form have been filled out.
 
 
 25
 Had Dr. Brezler considered the results of the positive x-ray which was taken as part of the consultative examination, and discussed them in his report, and had he adequately completed the report form describing the extent of claimant's dyspnea and the basis for his conclusion that claimant's atherosclerotic cardiovascular disease with angina pectoris was not related to dust exposure in Mr. Hustead's coal mine employment, the Court might agree with the Director's contention that he has discharged his duty of developing the medical evidence necessary for a determination of claimant's entitlement to benefits. Under these circumstances it does not. Arranging to obtain an informed medical opinion regarding claimant's condition is not enough if that opinion is less than thorough and not of sufficient quality to warrant credence. See, Newman v. Director, Office of Workers' Compensation, 795 F.2d 1162 (8th Cir.1982) (The Department of Labor did not fulfill its responsibility by arranging to obtain an informed medical opinion but then rejecting that opinion as not credible).
 
 III.
 
 26
 On the basis of the foregoing, we remand for further development of the record and reconsideration in conformity with this decision.
 
 MURNAGHAN, Circuit Judge, concurring:
 
 27
 In this most sympathetic case, I agree that further development of the record is merited. However, there are several implications of the majority opinion which trouble me. First, the opinion seems to confuse the burden of establishing pneumoconiosis with the burden of establishing total disability. The Administrative Law Judge did not err in not discussing the positive x-ray reading when he was evaluating whether the claimant had met his burden of establishing total disability.
 
 
 28
 Second, criticism of the Administrative Law Judge for discrediting the letter from Dr. Sybert seems somewhat misplaced. While I agree that the Administrative Law Judge should have attempted to secure additional evidence, I do not find too harsh the Administrative Law Judge's assessment of Dr. Sybert's letter as presenting a not well-reasoned or well-documented opinion. I am made uneasy by the blanket statement in the opinion that "neither the regulations or the case law require a doctor's opinion to state a specific diagnosis of a respiratory or pulmonary impairment in order for it to qualify as a well-reasoned opinion under 20 C.F.R. Sec. 718.204(c)(4)."
 
 
 29
 Third, Dr. Brezler's report was to my mind of sufficient quality to warrant credence. While he may not have explained everything in minute detail, the report was an adequate one.
 
 
 30
 Perhaps my questioning the majority opinion in several respects will be clarified and disposed of by reason of the remand which is ordered.